IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CEASER HANCOCK and EMMA BENAVIDES, individually and on behalf of all others similarly situated, §§§§§ | |
| Plaintiffs, § | |
| § | Civil Action No. 3:07-CV-1441-D |
| VS. § | |
| § | **[SEALED OPINION]** |
| CHICAGO TITLE INSURANCE COMPANY, §§§ | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Defendant Chicago Title Insurance Company ("Chicago Title") moves for a determination that the work product doctrine does not apply to a specific document produced by a non-party. Specifically, Chicago Title seeks a determination that a United States Postal Service ("USPS") tracking document is not protected by the attorney work product doctrine. Because the court concludes that any protection the tracking document may have enjoyed was waived by its disclosure to Chicago Title during discovery, the court grants Chicago Title's motion.

I

To decide Chicago Title's motion, the court need not recount at length the background facts and procedural history of this case.[1] The court will focus instead on the facts that involve the

---

[1]For a thorough discussion of the background facts and procedural history of this case, see *Hancock v. Chicago Title Ins.*

tracking document and its disclosure. Plaintiff Ceaser Hancock ("Hancock") filed this putative class action in August 2007, alleging that Chicago Title failed to discount the premium it charged for his reissue title insurance policy, as was required by Texas law. On September 20, 2007 Susan Scott ("Scott"), an employee of Chicago Title's title agent, sent Hancock a letter explaining that he was due a refund because of an error in the premium he was charged. Enclosed with the letter was a check in the amount of $333.55, which Hancock cashed.

After Chicago Title moved for summary judgment in July 2008, Hancock met with his counsel, Eric G. Calhoun, Esquire ("Calhoun"). Afterward, Hancock sent Scott an August 28, 2008 letter that stated:

> By letter dated September 20, 2007, you sent me a check for $333.55. I did not understand what it was for at the time. It has come to my attention that Chicago Title Insurance Company has recently taken the position that the check was an effort to settle or dispose of my claims against Chicago Title in a pending lawsuit. I did not agree to settle or release any such claims. Accordingly, enclosed is a check #6839 in the amount of $333.55, payable to Chicago Title Insurance Company, FNAS Division.

Ps. App. 2. On September 4, 2008 Hancock requested and obtained from USPS a tracking document confirming that Scott received his letter.

---

Co., ___ F.Supp.2d ___, 2009 WL 2002919, at *1-*2 (N.D. Tex. July 9, 2009) (Fitzwater, C.J.).

The USPS tracking document that Hancock seeks to protect also confirms delivery of his August 28, 2008 letter to Scott. USPS generated the delivery confirmation on September 5, 2008 at the request of Annette Engle ("Engle"), Calhoun's paralegal, who had entered the letter's 20-digit tracking number. Chicago Title contends that the delivery confirmation is relevant to this case because it impeaches Hancock's deposition testimony, in which he stated that his counsel had nothing to do with the August 28 letter. Chicago Title also contends that the delivery confirmation may demonstrate unethical conduct by proposed class counsel, namely, "caus[ing] or encourag[ing] another to communicate about the subject of the representation with a person . . . the lawyer knows to be represented by another lawyer regarding that subject." Tex. Disciplinary R. Prof'l Conduct 4.02(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R. Art. X, § 9).

Chicago Title obtained the delivery confirmation when Hancock's wife produced it in response to a subpoena. When Chicago Title asked about the delivery confirmation during Hancock's deposition, Calhoun asserted that the document had been inadvertently produced and was protected by the attorney work product doctrine. Calhoun invoked the protections of Fed. R. Civ.

P. 26(b)(5)(B)[2] and sought the return of the document. Chicago Title now seeks a determination that the work product doctrine does not protect the delivery confirmation, asserting, *inter alia*, that the document is not attorney work product and that disclosure of the document waived any protection it may have enjoyed.

II

The purpose of the attorney work product doctrine is to shield the mental processes of an attorney from discovery by an adverse party. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *In re Grand Jury Subpoena*, 220 F.3d 406, 408 (5th Cir. 2000). The doctrine creates a qualified immunity for documents and tangible things prepared in anticipation of litigation or for trial by or

---

[2]Rule 26(b)(5)(B) provides the procedure for obtaining the return of privileged information produced in discovery:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

for a party or its representative. *See* Rule 26(b)(3)(A). "The burden of proving . . . the applicability of the work product immunity doctrine is on the party claiming protection." *Varo, Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 141 (N.D. Tex. 1989) (Fitzwater, J.) (citations omitted).

                                III

Although it is at least unclear, if not doubtful, that the delivery confirmation qualifies as attorney work product, the court will assume *arguendo* that it does. Nevertheless, any protection the work product doctrine may have afforded the delivery confirmation has been waived by the disclosure of the document to Chicago Title.

When a disclosure is inadvertent, as Hancock asserts is true of the disclosure of the delivery confirmation, courts in this circuit traditionally consider the circumstances surrounding the disclosure, including: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993). Recently enacted Fed. R. Evid. 502 also addresses waiver of attorney work product protection. It provides that inadvertent disclosure does not operate as a waiver if the holder of the protection took reasonable steps to prevent disclosure and to promptly rectify the

error. Fed. R. Evid. 502(b). The court considers the *Alldread* factors and concludes that Hancock waived the protections of the attorney work product doctrine.

Hancock did not take reasonable precautions to prevent disclosure of the delivery confirmation. Indeed, Hancock has pointed to no precautions that he or his counsel took to prevent disclosure. The document was not marked privileged or confidential, and there is no indication that it was even kept separate from other, non-privileged documents. Hancock explains that the delivery confirmation was probably inadvertently disclosed because it is very similar in appearance to the delivery confirmation prepared by USPS at his request.[3] Its similarity to other documents does not excuse the failure to take precautions. If anything, the fact that it was not apparent from the face of the document that it was protected from disclosure accentuates the need for precautions that Hancock and his counsel failed to take.

After Chicago Title began to question Hancock at his deposition, Calhoun immediately requested the return of the delivery confirmation, and he invoked the protections of Rule 26(b)(5)(B). He asserts that he first learned of the disclosure at the deposition. This factor is the only one that arguably weighs

---

[3]Hancock does not explain why the delivery confirmation requested by Engle falls under the attorney work product doctrine while the virtually identical delivery confirmation requested by Hancock does not.

in Hancock's favor.

The scope of discovery was very limited. The delivery confirmation was one of only 162 pages of documents that Hancock's wife produced. A thorough review of 162 pages is far from burdensome.

The extent of the disclosure was complete. Chicago Title reviewed the simple delivery confirmation receipt before Hancock discovered the disclosure, and it used the document as a deposition exhibit. Chicago Title now knows of the existence of the delivery confirmation and all of the information it contains. Hancock does not explain what legitimate purpose would be served by requiring the return of the document.

Hancock also fails to explain how the overriding issue of fairness supports protection of the delivery confirmation. He essentially argues that the document is irrelevant and does not demonstrate what Chicago Title contends it does, namely, inconsistent testimony by Hancock and unethical conduct by his counsel. If the document is irrelevant to these matters, then Hancock has nothing to be concerned about, and protection is not needed. If, however, it impeaches Hancock's testimony and/or reveals unethical conduct by Hancock's counsel, fairness would strongly support a finding of waiver. The court need not decide at this time what the delivery confirmation demonstrates because, in any event, Hancock has not shown that an overriding issue of

fairness supports further protection of the disclosed document.

IV

Because Chicago Title filed this motion under seal, the court is also filing this memorandum opinion and order under seal.  In view of this ruling, however, it is not apparent that the opinion should remain under seal.  Accordingly, within 14 days of the date this memorandum opinion and order is filed, the parties must file a joint status report advising the court whether any portion should remain sealed.  If the parties disagree in some respect, the party requesting that a part remain sealed must identify the part and state the reason for the request.

*   *   *

For the reasons explained, the court holds that the disclosure of the delivery confirmation receipt waived any protection it may have enjoyed under the attorney work product doctrine. Accordingly, Chicago Title's December 2, 2008 motion for determination that the work product doctrine does not apply is granted.

**SO ORDERED.**

August 21, 2009.

_____<br>
SIDNEY A. FITZWATER<br>
CHIEF JUDGE