IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CEASER HANCOCK and EMMA | § | |
| BENAVIDES, individually | § | |
| and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:07-CV-1441-D |
| VS. | § | |
| | § | |
| CHICAGO TITLE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The dispositive question presented by plaintiff's motion for class certification is whether she has met the predominance requirement of Fed. R. Civ. P. 23(b)(3). Concluding that she has not, the court denies the motion.[1] Defendant moves to implead a third-party defendant. The court grants the motion.

I

A

Plaintiffs Ceaser Hancock ("Hancock") and Emma Benavides ("Benavides") brought this putative class action on behalf of themselves and other customers of defendant Chicago Title Insurance Company ("Chicago Title"). They allege that Chicago Title failed

---

[1]As in *Fener v. Belo Corp.*, 560 F.Supp.2d 502, 503 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.), *aff'd*, 579 F.3d 401 (5th Cir. 2009), the court is deciding this motion for class certification without conducting an evidentiary hearing or receiving oral testimony, as permitted under Fed. R. Civ. P. 43(c).

to apply mandatory discounts to premiums charged for title insurance policies in Texas. Plaintiffs originally sued Chicago Title to recover under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), and under Texas law for unjust enrichment, money had and received, and implied contract. The court granted summary judgment dismissing the RESPA and unjust enrichment claims, leaving only plaintiffs' claims for money had and received and breach of implied contract. *See Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 564 (N.D. Tex. 2009) (Fitzwater, C.J.). Benavides now moves for class certification.[2]

B

In Texas, title insurers are required to follow rate-setting guidelines published by the Texas Department of Insurance ("TDI"), which sets the mandatory premium rates for title insurance policies. The TDI sets a "basic rate" for title insurance policies on first lien mortgages, which are generally required by the vast majority (if not all) of residential mortgage lenders in Texas. Title insurers, such as Chicago Title, often contract with independent agencies to calculate and collect such insurance premiums.

Under TDI's rate guidelines, as contained in the Basic Manual

---

[2]In the class certification motion, plaintiffs state that Hancock is withdrawing for health reasons from consideration as a class representative. For convenience, the court will at times refer to Benavides as if she were the sole named plaintiff in this case.

of Rules, Rates and Forms for the Writing of Title Insurance in the State of Texas ("Basic Manual"), a borrower who obtains a mortgage within seven years of a prior mortgage covered by title insurance is entitled to a discounted rate on the cost of the subsequent title insurance policy.[3]   The "R-8" or "reissue" credit is a percentage discount applied to the basic rate.   Title insurance policies issued with a reissue discount are substantively identical to those under the basic rate, but they cost less.   Insurers are required to give the reissue discount whenever it applies; the borrower need not request it.   In fact, a borrower may not even realize that she has or has not received the R-8 credit when the insurance premium is paid (typically during loan closing).

The TDI does not offer any instruction in the Basic Manual concerning how title insurers are to determine whether a prior mortgage is insured by a mortgagee policy.   According to the discovery and class certification briefing in this case, title insurers actually employ *ad hoc* practices in determining whether borrowers are entitled to the discount.   This is because the documents available to insurance agents at the time they decide whether a reissue credit applies typically do not definitively show whether a prior mortgage was covered by title insurance.   While the

---

[3]For this "credit" to apply, the borrower must be seeking title insurance for a "Mortgagee Policy, issued on a loan to fully take up, renew, extend or satisfy an old mortgage(s) that is *already insured by a Mortgagee Policy(ies)*."   Basic Manual § III, Rate Rule R-8 (emphasis added).

agent can generally determine whether the property was subject to a prior mortgage, and, if so, the mortgage balance, there is usually no way to verify whether there was a title policy covering that mortgage.  Consequently, title insurers base their reissue credit decisions on essentially circumstantial evidence that the prior mortgage was insured.[4]  There are a number of signs that insurers typically look for in making their decisions, based on the documents that are usually available in the file.  This circumstantial evidence that a prior mortgage was insured does not carry any legal weight.  It simply represents accepted practices developed by the title insurance industry in attempting to comply with the R-8 discount requirement.

    Chicago Title has adduced evidence that it follows these customary procedures, that its internal policy is to err in favor of giving a reissue credit whenever there is reason to believe that the prior mortgage might have been insured, and that it instructed its independent agents to do the same.  Thus Chicago Title's policy records, which include the documentation it uses to calculate the premiums charged to customers, also contain only circumstantial evidence that a prior mortgage was insured.  Benavides does not

---

[4]For example, agents recognize that it is standard practice for an institutional lender in Texas to require title insurance on a first lien residential mortgage.  Therefore, if a borrower's file indicates that there was such a mortgage, the subsequent insurer might assume that the prior loan was insured.  It would apply the reissue discount even though no definitive proof (e.g., a copy of the title insurance policy) was available.

challenge these facts, although she does maintain that Chicago
Title routinely fails to give the discount in cases where it is
required.

C

Benavides alleges that Chicago Title failed to give her the R-
8 reissue discount when she refinanced her home mortgage within two
years of the date of her first mortgage.  Capital Title of Texas,
LLC ("Capital") issued the policy on behalf of Chicago Title, and
Capital calculated and collected the premium without applying the
reissue credit.

Benavides' state-law claim for money had and received rests on
her assertion that she qualified for a reissue discount when she
refinanced her home loan, but that Chicago Title failed to give her
the discounted rate required by Texas law.  She therefore alleges
that Chicago Title holds money in the nature of a debt that in
equity and good conscience belongs to her and to the plaintiff
class.

Benavides also seeks recovery under an implied contract
theory, contending that once Chicago Title received a premium
payment, it was required to issue a lender title policy, and that
the contract included an implied term that Chicago Title would
charge a lawful premium and give Benavides the mandatory refinance
credit.  Benavides avers that Chicago Title breached the contract
when it failed to give the reissue credit.

- 5 -

Benavides argues that Chicago Title and other title insurers routinely disregard their obligations to give a reissue discount, and that the failure of title insurance underwriters and their agents to provide mandatory reissue discounts is prevalent throughout the title insurance industry. She contends that because relatively unsophisticated borrowers rely on title agents who receive a substantial portion of title premiums, there is little incentive to give borrowers the proper discounts. Chicago Title contests Benavides' assertions, contending that it gives customers the refinancing discount, and that any overcharges are the result of human error.

Benavides seeks to represent a class of plaintiffs who were overcharged by Chicago Title for reissue policies under similar circumstances. She moves for certification of the following class:

> All persons who, within seven (7) years of the date of an existing mortgage on their residential real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy underwritten by [Chicago Title], and did not receive a refinance credit.

P. Mar. 27, 2009 Br. 18-19.[5]   Chicago Title opposes the motion.[6]

---

[5]Because the court is deciding multiple motions, for clarity it will refer to each brief and appendix by the date filed.

[6]Chicago Title filed on July 27, 2009 a motion to disregard or, in the alternative, for leave to file surreply, contending that Benavides raised new issues in her reply brief. Based on the court's reasoning in denying Benavides' motion for class certification, the court denies Chicago Title's motion as moot.

It also moves to implead Capital as a third-party defendant.[7]

## II

The court first addresses Benavides' motion for class certification.

## A

"To obtain class certification, a party must satisfy Rule 23(a)'s four threshold requirements (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of Rule 23(b)(1), (2), or (3)." *Gene and Gene, LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997)). Benavides' motion seeks certification under Rule 23(b)(3). Rule 23(b)(3) requires, in pertinent part, that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." The party seeking class certification bears the burden of proving that all the required elements of Rule 23 are met. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). She must do so by a preponderance of the

---

[7]After the initial, response, and reply briefs were filed regarding the class certification motion, both parties filed notices of supplemental authority. Unlike N.D. Tex. Civ. R. 56.7, which requires the permission of the presiding judge to file supplemental pleadings, briefs, authorities, or evidence in connection with summary judgment motions, the local civil rules do not explicitly require leave of court to submit supplemental authorities in the context of a class certification motion. The court has therefore considered these pleadings and the cases cited and, where appropriate, has incorporated the supplemental authorities in this memorandum opinion and order.

evidence.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572
F.3d 221, 228 (5th Cir. 2009).  A class action "may only be
certified if the trial court is satisfied, after a rigorous
analysis, that the prerequisites of Rule 23(a) have been
satisfied." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

B

Benavides' motion for class certification turns on whether she
can meet the demanding predominance requirement of Rule 23(b)(3).

To analyze whether a class certification motion meets the
predominance requirement, the court "must consider how a trial on
the merits would be conducted if a class were certified." *Sandwich
Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205,
218 (5th Cir. 2003).  "This, in turn, entails identifying the
substantive issues that will control the outcome, assessing which
issues will predominate, and then determining whether the issues
are common to the class, a process that ultimately prevents the
class from degenerating into a series of individual trials." *Bell
Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)
(quotation marks omitted).  "The predominance requirement of Rule
23(b)(3), though redolent of the commonality requirement of Rule
23(a), is 'far more demanding' because it 'tests whether proposed
classes are sufficiently cohesive to warrant adjudication by
representation.'" *Gene and Gene,* 541 F.3d at 326 (quoting *Amchem
Prods.*, 521 U.S. at 623-24).

When making its class determination under Rule 23(b)(3), the court must keep in mind the policy implications that inform Rule 23. *See Lonergan v. A.J.'s Wrecker Serv. of Dallas, Inc.*, 1999 WL 527728, at *6 (N.D. Tex. July 8, 1999) (Fitzwater, J.) (citing *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 315 (5th Cir. 1978)). Certification under Rule 23(b)(3) "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Blue Bird*, 573 F.2d at 315-16 (quoting Rule 23 advisory committee's note (1966)).

III

A

Benavides maintains that she satisfies the predominance requirements based on the following seven questions that she contends are common to the putative class:

> (1) Whether the plaintiffs refinanced an existing mortgage within seven (7) years after the recording of the existing mortgage;
>
> (2) Whether the plaintiffs qualify for the mandatory reissue discount in connection with the reissue lender title policy;
>
> (3) The dollar amount of the reissue discount required to be applied to the plaintiff's transaction;
>
> (4) Whether Defendant split the unearned discounts with its agents;
>
> (5) Whether Defendant's splitting of the

unearned premiums with title agents violated
Section 8(b) of RESPA;

(6) Whether Defendant breached other legal
duties to class members by failing to give
them the reissue discount mandated by Texas
law and retaining those unearned premiums; and

(7) Whether plaintiffs are entitled to recover
three times the amount charged to them for the
reissue lender title insurance policies,
pursuant to 12 U.S.C. § 2607(d)(2).

P. Mar. 27, 2009 Br. 22-23.

Chicago Title argues that human error led to Benavides'
overcharge, that there are similar explanations for any other
failures to apply the R-8 credit, and that there is no evidence
that the errors were part of a plan to defraud consumers.  It
asserts that Benavides has failed to show a common practice or
policy for overcharging, a scheme to defraud consumers, or a
systematic failure to train agents, and that she is urging the
court to assume that alleged overcharges are typical of each other.
Chicago Title also maintains that there is no class-wide
generalized proof that can prove liability, and that only a file-
by-file review will suffice.  It posits that class certification
would perhaps be appropriate if there were a class-wide question
that would establish liability, but that the predominant issue in
this case is whether a borrower should have received, but did not
receive, the R-8 discount; the resolution of each claim turns on
that issue, and there is neither a class-wide method to prove the
claim nor class-wide evidence that reflects whether a potential

- 10 -

class member qualified for an R-8 discount; and that because the class-wide proof is unable to identify only the policies that involved overcharges, individual mini-trials will predominate, and the requested class cannot be certified.

Benavides argues in reply that the reasons (including human error) for failing to give the mandatory credit in a particular transaction are irrelevant. She maintains that the relevant questions can be answered from standard form documents found in each file and that common evidence exists as to liability. Benavides asserts that, because similar documents exist within each potential class member's file and these can be used to calculate and determine whether a reissue credit was wrongly withheld, there are common questions that can be determined using class-wide proof.

B

As a threshold matter, the court notes that three of Benavides' proposed questions——(4), (5), and (7)——pertain only to the RESPA claim that has since been dismissed. Therefore, the court will consider only whether one or more of questions (1), (2), (3), and (6) are sufficient to meet Rule 23(b)(3)'s predominance requirement.

"To decide whether there is a class-wide basis for deciding the predominant issues, [the court] must first ascertain which are the predominant issues that must be decided on a class basis." *Gene and Gene*, 541 F.3d at 326. A class plaintiff cannot merely

point to a "common course of conduct" without also demonstrating "whether the common course of conduct provide[s] a class-wide basis for deciding the predominant class issues of fact and law." *Id.*

Although this case presents "common" questions in a colloquial sense——because the same battery of questions needs to be answered for each possible member of the putative class——there is nothing class-wide about Benavides' proposed questions that predominates. Each borrower's claim presents an insular inquiry: whether the reissue credit was properly applied or withheld *in that particular case*. Merely asking the same questions across a spectrum of thousands of potential plaintiffs does not satisfy the strictures of Rule 23(b)(3).

To take Benavides' proposed "question (2)" as an example,[8] the court cannot conclude that the question "[w]hether the plaintiffs qualify for the mandatory reissue discount in connection with the reissue lender title policy," is a common substantive issue that predominates. In some cases the answer will be "yes," and in others "no." This is akin to a class that was rejected in *Gene and Gene,* where there was "no class-wide proof available to decide [the predominant question] and only mini-trials [could] determine this

---

[8]The court is analyzing this question to illustrate why Benavides' motion fails the predominance requirement of Rule 23(b)(3). Because the same flaws exist as to questions (1), (3), and (6), the court will not analyze these questions in detail.

issue." *Gene and Gene*, 541 F.3d at 328.[9]

---

[9]In *Gene and Gene* the Fifth Circuit held that the individualized inquiries central to the class members' claims "prevent[ed] the purported class from having the required cohesiveness and defeat[ed] the predominance requirement." *Gene and Gene,* 541 F.3d at 329. The suit complained of thousands of unsolicited fax advertisements sent to individuals and businesses, in violation of federal law. *Id.* at 322-23. The plaintiffs argued that the fax campaign was "part of a common course of conduct." *Id.* at 323.

The Fifth Circuit first concluded that the issue of each class member's consent to receive the faxes would be predominant at trial, *id.* at 327, and it assumed *arguendo* that the question of consent satisfied requirement of commonality in Rule 23(a)(2), *id.* at 325. Focusing on the district court's determination that the predominance requirement was satisfied based on a "common course of conduct, fax blasting," the panel held that the district court had failed to identify the substantive issues that would control the outcome of the case, assess which issues would predominate, or determine whether the issues were common throughout the proposed class. In particular, the district court had failed to explain how the common course of conduct it described would affect a trial on the merits. The district court mistakenly concluded that the case would not degenerate into a series of individual trials. *Id.* at 326.

The panel held that, instead, to present a certifiable class, it was necessary that the plaintiff "advance a viable theory employing *generalized proof* to establish liability with respect to the class involved." *Id.* at 328 (emphasis added). It concluded that the class was unfit for certification given that neither the plaintiff nor the district court had explained how the course of conduct would be of particular relevance at trial. *Id.* at 329.

The Fifth Circuit recognized that, although the defendant's fax blasting may have been a shared fact among all potential class members' cases, all parties agreed that those advertisements (if sent to unconsenting recipients) were improper. This undisputed question would therefore not be the predominant issue at trial. To the contrary, because the defendant had raised the issue of consent in each case, the question whether a plaintiff had consented to receive a fax would be the main issue for the district court to sort out. But the plaintiff had failed to present a "sensible method of establishing consent or the lack thereof via class-wide proof." *Id.* at 329. The only way to distinguish consenting

In deciding whether to certify a class, the court must "consider how a trial on the merits would be conducted if a class were certified." *Sandwich Chef*, 319 F.3d at 218. A trial of Benavides' "question (2)" would consist of taking each class member's file and determining whether *this* plaintiff qualified for the mandatory reissue discount. This would require resolving whether the plaintiff in question had a previous mortgage, whether the plaintiff was seeking the new title insurance within seven years of the prior mortgage, and whether the prior mortgage was covered by title insurance. This process must then be repeated for each plaintiff. Even if spreadsheets or computer records could accelerate the process of reviewing the files, individualized fact-based inquiries would predominate at trial.

The question that is common to all potential class members here is whether a borrower who qualified for the R-8 discount and did not receive it is entitled to a refund. But all parties agree that the answer to this question is "yes." As Benavides recognizes in her class certification motion, "[Chicago Title] and its agents do not dispute that if the mandatory R-8 credit is applicable, and was not given, that amount *must* be refunded to the borrower." P. Mar. 27, 2009 Br. 30-31 (emphasis in original). Therefore, the issues that will actually predominate at trial──as illustrated by

recipients from unconsenting ones was through a case-by-case factual analysis. Therefore, the requirements for certification were not met.

Benavides' question (2)—turn on case-by-case inquiries that address the factual components necessary to determine whether a particular plaintiff is entitled to the refund.[10]

The court's conclusion that individual issues would predominate at trial rests, therefore, on two grounds. First, certification of the class would require an extensive file-by-file review to sort out the factual details as to each plaintiff. Second, there are no truly class-wide questions that would benefit from class determination. There is no dispute in this case that, when the facts show that a refund is warranted, Chicago Title must give the refund. As the Fifth Circuit held in *Gene and Gene*, where the general question of liability is undisputed, and the only task for the district court is to conduct a case-by-case factual analysis to determine where that liability attaches, class certification is inappropriate. *Gene and Gene*, 541 F.3d at 329.

Courts may refuse class certification where the "[class-wide] liability issues are relatively straightforward," but there are

---

[10]In *Kingsberry v. Chicago Title Insurance Co.*, No. C07-5706RLB (W.D. Wash. Oct. 29, 2009) (oral bench ruling)—a reissue-credit class action similar to this case—the court refused to certify the proposed class.  It concluded that the plaintiff class did not satisfy the predominance requirement because, although there were certain common questions of fact, the precise factual questions to determine injury were unique to each customer.  It was undisputed that if an insured qualified for a discount rate, she should have received it.  But this general question was not the one that would dominate at trial.  *Id*. at 3.  Instead, thousands of file-by-file mini-trials would be required regarding issues of surcharges, discounts, the prior lender's policy, and the like.  *Id*. at 4-5.

- 15 -

"vastly more complex individual issues." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006).[11]  And while the presence of individualized issues will not necessarily prevent certification, there must be some underlying common question whose resolution would "constitute a significant part of the individual cases." *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999).  The mere fact that each plaintiff's claim involves the same list of questions does not transform those questions into common substantive issues that predominate.  Absent any larger common questions requiring class-wide determination, such an exercise would require the court to conduct the type of mini-trials that defeat class certification.

The fact that each file likely contains similar documents is also insufficient to transform a case-by-case inquiry into class-wide proof.  For a question to be a common substantive issue that predominates, it must be definitively answered for all class

_____

[11]In *Steering Committee* the Fifth Circuit addressed a class action involving injuries sustained during a fire, upholding the district court's denial of class certification.  The panel concluded that although the defendant's negligence or strict liability for improperly installing the valve and causing the fire could be determined on a class-wide basis, this question only proved that some common issues existed across the class.  *See Steering Comm.*, 461 F.3d at 603.  There were questions of causation and damages that were unique to each class member.  *Id.*  The panel held that, given the complexity of the causation and damages issues compared to the liability issues, the district court did not abuse its discretion by concluding that the plaintiffs had failed to demonstrate that the class issue of the defendant's negligence or strict liability predominated over the more complex individual issues of medical causation and damages.  *Id.*

members using a generalized set of facts and producing one unified conclusion.  A court must not "assume[] that because the common issues would play a part in every trial, they must be significant." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996).  Such assumptions "would write the predominance requirement out of the rule, and any common issue would predominate if it were common to all the individual trials."  *Id.*[12]

Benavides has therefore failed to "advance a viable theory employing generalized proof to establish liability with respect to the class involved."  *Gene and Gene*, 541 F.3d at 328.  Instead, she has done "no more than prove that some common issues exist across the class."  *Steering Comm.*, 461 F.3d at 603.  The court finds that Benavides' proposed questions are not truly common substantive issues that predominate as to the whole class because they amount to a case-by-case inquiry to identify and calculate overcharges. Therefore, because there is "no class-wide proof available" to determine which borrowers are owed a refund, "and only mini-trials can determine this issue," the court finds that the predominance requirement of Rule 23(b)(3) is not satisfied.[13]

---

[12]The court does not mean to suggest that it is finding that there are common issues in the case within the meaning of Rule 23(a)(2).  Because the court concludes that the predominance requirement is not satisfied even if common issues exist, it need not address the issue of commonality.

[13]Benavides relies on *Mims v. Stewart Title Guaranty Co.*, 254 F.R.D. 482 (N.D. Tex. 2008) (Godbey, J.), *appeal docketed*, No. 09-10127 (5th Cir. Feb. 5, 2009).  In *Mims* Judge Godbey certified a

C

The court's determination that individualized inquiries would predominate at trial is strengthened by the fact that Benavides has failed to demonstrate any reliable method of identifying the potential class members.  This is because even a case-by-case review of Chicago Title's files would not necessarily provide definitive proof that a particular prior mortgage was insured (and thus whether a reissue credit was merited), since the files do not contain this information.  The court would be required not only to oversee the culling of perhaps tens of thousands of files to identify overcharges, but also to settle the inevitable evidentiary

_____

class similar to this one.  The plaintiff brought claims under RESPA, as well as money had and received, unjust enrichment, and breach of implied contract, just as in today's case.  *Id.* at 484.

The court concludes that *Mims* is distinguishable.  The class in *Mims* was certified with the RESPA claim still intact.  Judge Godbey found that "common issues of fact predominate with regard to Plaintiffs' RESPA § 8(b) claim."  *Id.* at 487.

> Plaintiffs argue that, as a matter of fact, neither the title agent nor [defendant] provided services in any of the transactions to justify the excess charge.  This is the contention on which the Plaintiffs' RESPA § 8(b) claim rests, and such a contention is capable of being tested on a class wide basis without individualized inquiries into the circumstances of each transaction.

*Id.*  In the present case, the RESPA claim was dismissed through summary judgment.  Although the court does not suggest that Rule 23(b)(3) would automatically be satisfied if Benavides' RESPA claim remained, the presence of class-wide disputes over RESPA's application would present a much closer question concerning whether the predominance requirement is met.

disputes within those files regarding whether a prior mortgage was insured.

Chicago Title has asserted, and Benavides does not dispute, that some prior mortgages are not insured. The materials within Chicago Title's policy files only show whether a particular borrower had a prior mortgage when the policy was written, but not whether that mortgage was insured by a previous title policy. But Benavides seeks in her proposed class definition to cast a wider net than is required by the Basic Manual, requesting that the class be defined as

> [a]ll persons who, within seven (7) years of the date of an existing mortgage on their residential real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy underwritten by [Chicago Title], and did not receive a refinance credit.

P. Mar. 27, 2009 Br. 18-19. Under Benavides' remaining causes of action, Chicago Title can only be held liable if it violated the Basic Manual—that is, if it failed to give the reissue credit when a borrower's prior mortgage was "already insured by a Mortgage Policy." Benavides' proposed class definition would essentially read the "already insured" requirement completely out of Rule R-8 for the purpose of determining Chicago Title's liability.

Even a thorough audit of Chicago Title's files would not fully settle whether a borrower's prior mortgage was insured by title insurance. Therefore, holding Chicago Title liable for overcharges

would require additional evidence that its conduct in a particular case in fact violated the Basic Manual——that is, evidence that a borrower's prior mortgage was covered by title insurance.  Like the plaintiffs in other reissue credit cases, Benavides does not define her proposed class in terms of borrowers "whose prior mortgages were insured," presumably because she recognizes that proving the existence of a prior policy is difficult.  But she has not suggested how the court can separate a prior insured mortgage from one that was uninsured.[14]  Benavides instead urges the court to examine Chicago Title's internal policy that grants credits even in questionable cases, and rely on it (or something close) as the standard for imposing legal liability.  The court declines to do so.[15]

---

[14]Even if the court were to assume that Benavides' proposed class definition accurately identified borrowers who should have received a reissue credit, individual inquiries would still predominate.  Her proposal might simplify the individual-inquiry process, but it would not raise any class-wide common questions.  The absence of an accurate method of identifying class members only further confirms that individual issues would predominate at trial.

[15]Recent decisions in reissue-credit cases in the Northern District of Ohio have also highlighted the difficulty of identifying when a prior mortgage was insured.

In *Chesner v. Stewart Title Guaranty Co.*, 2009 WL 585823 (N.D. Ohio Jan. 9, 2009), the court decertified a class.  Although, as Benavides points out, the *Chesner* court was examining Ohio rate regulations that place stricter burdens on borrowers to obtain the reissue discount than does Texas, *Chesner* and subsequent Ohio cases are still relevant.  They examine whether indirect evidence that a prior mortgage was insured can prove that a policy existed and can therefore support a judgment of liability.  The relevant Ohio rate regulations mandate that a discount be given "provided the Insurer

D

Because the court has determined that the proposed class fails to meet the predominance requirement of Rule 23(b)(3), it is unnecessary to examine the remaining certification requirements of Rule 23(a). Accordingly, the court denies Benavides' motion for class certification.

---

is given a copy of the prior policy, or other information sufficient to enable the Insurer to identify such prior policy upon which reissue is requested." *Id.* at *4. *Chesner* held that, even when construed favorably to the plaintiffs, "proof of a prior mortgage cannot establish entitlement to the discount; rather, the evidence of the actual prior policy must be provided." *Id.* at *8. The court concluded that a case-by-case analysis would be required to identify when a particular policy was insured. *Id.* at *10. Because such an exercise would be contrary to the principles of Rule 23, the court found "that individual issues predominate over common ones, and that the case would be unmanageable if administered as a class action." *Id.* at *10-*11.

In *Randleman v. Fidelity National Title Insurance Co.*, No. 3:06CV07049 (N.D. Ohio Sept 15, 2009), the court also decertified a class. *Randleman* held that "even if many, or even most class members had title insurance with their earlier financing, an indeterminate number (and, in all likelihood, not a small, much less legally insignificant number) did not." *Id.* at 11. Therefore, because not all members of the proposed class would have had a prior title insurance policy, holding the insurance company liable would require an individualized inquiry and proof of prior insurance beyond merely the presence of an earlier mortgage. *Id.* at 16.

And in *Macula v. Lawyers Title Insurance Co.*, No. 1:07CV1545 (N.D. Ohio Nov. 9, 2009), the court held that "there must be an actual prior policy for the discount to apply, and there must exist proof as to which mortgages were, in fact, insured." *Id.* at 8. Absent direct proof of a previous insurance policy, "any presumption that an institutional mortgage was insured by a title policy is irrelevant." *Id.* at 8-9 ("Because an individualized inquiry is required to determine whether each claimant is entitled to the discounted rate, individual issues predominate.").

IV

Chicago Title moves for leave to implead Capital, the independent agent who calculated and collected the premium on the Benavides policy, as a third-party defendant.

A

Chicago Title contends that, if Benavides was overcharged, it has claims against Capital for violating the agency agreement between them, and a claim for breach of the common law fiduciary duty and duty of care.  Chicago Title also maintains that it can seek indemnity from Capital for any damages that result from this suit.  Although Benavides opposes Chicago Title's motion on several grounds, her primary objection is that allowing Chicago Title to add Capital as a third-party defendant will further complicate the class certification process.

Because the court has already denied class certification for reasons other than the alleged complication effected by impleader, it need not address Benavides' objections that rest on grounds related to class certification.  Therefore, the court will assess the merits of Chicago Title's motion without considering how allowing it to implead Capital might adversely impact class certification.

B

Under Rule 14(a)(1), when, as here, a defending party seeks to do so more than 14 days after serving its original answer, it may,

as third-party plaintiff and with leave of court, serve a summons and complaint on a nonparty who is or may be liable to the third-party plaintiff for all or part of the claim against it.  "The trial court has wide discretion in determining whether to permit such third-party procedure to be resorted to." *S. Ry. Co. v. Fox*, 339 F.2d 560, 563 (5th Cir. 1964).  Rule 14 is to be liberally interpreted.  6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1454, at 426 (2d ed. 1990).  In deciding a motion under Rule 14, courts can consider the prejudice to the parties, complication of trial issues, likelihood of delay, and timeliness. *In re Enron Corp.*, 2006 WL 1371089, at *2 (S.D. Tex. May 17, 2006).

The court grants Chicago Title leave to implead Capital. First, neither Benavides nor Capital will be unduly prejudiced by allowing Chicago Title to bring a third-party action against Capital.  This is a classic type of third-party action in which a defendant has a potential claim against a third party whose conduct is the subject of the plaintiff's claims (here, the independent agent who calculated and collected the premium on the Benavides policy), and who has allegedly breached an agency agreement with the defendant that covers the conduct for which the plaintiff sues the defendant.  As to the possibility of prejudice arising out of the timing of Chicago Title's third-party action, although Benavides objects that she has already been deposed and should not be deposed again by Capital, it is not clear that Capital would

need or request such a deposition.  And the fact that issues of indemnity between Chicago Title and Capital would raise new questions in the case does not warrant denying the motion.  Indeed, it is typical for third-party actions to give rise to new claims between the third-party plaintiff and third-party defendant.  *See Am. Fid. & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956) ("It is settled that impleader under Rule 14(a) does not require an identity of claims, or even that the claims rest on the same theory.").

Second, allowing Chicago Title to implead Capital will not unnecessarily complicate issues at trial.  Given that Benavides' claims stem in large part from actions taken by Capital as Chicago Title's agent, it will actually promote efficiency of judicial resources to settle all matters relating to this dispute in one lawsuit.  Benavides' argument that Chicago Title should proceed against Capital, if necessary, in a separate suit following the disposition of this case is not persuasive.  Particularly now that the motion for class certification has been denied, any plausible argument that impleading Capital will improperly complicate the issues at trial falls away.

Third, there is no apparent reason to conclude that allowing Chicago Title to implead Capital is likely to cause delay. Although there are probably additional facts to be developed that relate solely to Chicago Title's claims against Capital, many facts

overlap with Benavides' claims against Chicago Title.  And the
legal theories that Chicago Title seeks to assert against Capital
are not complicated.  Particularly when viewed in the context of a
case involving two plaintiffs who seek modest relief, the third-
party action cannot be seen as likely causing delay.

Fourth, Chicago Title's motion should not be denied based on
when it was filed.  Although Chicago Title did not file the motion
until approximately seven months after this case was filed in the
Western District of Texas, and approximately one month after it was
transferred to this court, the court had not yet set a deadline for
seeking leave to add parties.  Because Rule 16(b)(1) scheduling
orders must be filed in almost all civil cases, motions that are
filed before the court-ordered deadline are typically presumed to
be timely.  *See, e.g., Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL
206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.) (applying a
"presumption of timeliness" to a motion to amend pleadings).

C

In granting Chicago Title's motion, the court notes that it is
*permitting*, not *requiring*, a third-party action against Capital.
Significant changes——i.e., the court's decisions on summary
judgment and class certification——have occurred in this case since
Chicago Title sought leave to implead Capital.  Considering the
limited number of plaintiffs, the nature of the remaining claims,
and the remedies available to plaintiffs, Chicago Title may

- 25 -

conclude that impleading Capital is no longer warranted for reasons of expense or on other grounds.

Accordingly, the court grants Chicago Title leave to serve a third-party complaint and summons on Capital within 30 days of the date this memorandum opinion and order is filed.  If Chicago Title does so, the case will proceed with Capital joined as a third-party defendant.  If not, the court will assume that Chicago Title no longer desires to implead Capital.

*     *     *

Because the court finds that the proposed class action fails to meet the requirements of Rule 23, it denies Benavides' March 27, 2009 motion for class certification.  The court grants Chicago Title's January 12, 2009 motion to implead third-party defendant.

**SO ORDERED.**

December 9, 2009.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 26 -