IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CEASAR HANCOCK and EMMA | § | |
| BENAVIDES, Individually and | § | |
| on behalf of all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:07-CV-1441-D |
| VS. | § | (Consolidated with Civil Action |
| | § | No. 3:08-CV-1916-D) |
| CHICAGO TITLE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant- | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| CAPITAL TITLE OF TEXAS, LLC, | § | |
| | § | |
| Third-Party Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this litigation involving a failure to discount a title insurance premium, as required

under Rate Rule R-8 of the Texas Basic Manual of Title Insurance ("R-8"), the disputes

between plaintiffs and defendant-third-party plaintiff Chicago Title Insurance Company

("Chicago Title") have been resolved.  Chicago Title's third-party action against third-party

defendant Capital Title of Texas, LLC ("Capital"), in which Chicago Title asserts claims for

breach of contract, indemnity, and breach of fiduciary duty, remains.  Chicago Title moves

for partial summary judgment establishing Capital's liability on its breach of contract and

indemnity claims.  Capital moves for summary judgment dismissing all of Chicago Title's

claims.  For the reasons that follow, the court grants Chicago Title's motion for partial summary judgment establishing Capital's liability on Chicago Title's indemnity claim, and it denies the motion as to its breach of contract claim.  The court grants Capital's motion as to Chicago Title's breach of contract and breach of fiduciary claims and otherwise denies its motion.  The damages component of Chicago Title's indemnity claim remains for trial.[1]

I

Chicago Title is a title insurer licensed to do business in Texas.[2]  Capital acted as Chicago Title's title insurance agent from 2003 until 2008.  Chicago Title and Capital entered into an Issuing Agency Contract ("Contract") that governed their relationship.  The Contract

---

[1]Although Chicago Title pleads its indemnity claim as arising by contract and by common law, it does not move for summary judgment on this claim based on the common law.  Nor does Capital move for summary judgment based on the absence of evidence to support a common law indemnity claim.  Therefore, the court only considers whether either party is entitled to summary judgment on Chicago Title's contractual indemnity claim.

[2]Both sides have moved for summary judgment.  As the court has stated in cases like *AMX Corp. v. Pilote Films*,

> [b]ecause both parties have filed motions for summary judgment, the court will principally recount only the evidence that is undisputed.  If it is necessary to set out evidence that is contested, the court will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence.  In this way it will comply with the standard that governs resolution of summary judgment motions.

*AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)), *modified in part on other grounds*, 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) (Fitzwater, J.).

contained two provisions that are pertinent to this lawsuit.   Under ¶ 4(J), Capital was obligated to "[c]omply with all applicable laws and regulations relating to the conduct of [Capital's] business."  P. 7-31-12 App. 2.  Under ¶ 8(D), "[Capital] shall be liable to and agrees to indemnify and to save harmless [Chicago Title] for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following: . . . Failure of [Capital], its officers and employees to comply with the terms of this Contract . . . ."  *Id.* at 4.

In Texas, mortgage lenders require a borrower to purchase a lender title insurance policy as a condition of making a residential loan, including when a borrower refinances the loan.  *See Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 542 (N.D. Tex. 2009) (Fitzwater, C.J.) ( "*Hancock I*" ). These are sometimes referred to as "reissue" policies.  *Id.* R-8 requires that a discount be given on the premium for a reissue policy where the mortgage that is being refinanced was covered by title insurance.

In 2007 Emma Benavides ("Benavides"), formerly a plaintiff in this case, refinanced an existing loan on her residence.  Capital closed the transaction, acting as the agent of Chicago Title, the mortgagee title insurer.  Because Benavides' prior mortgage loan had been insured, she was entitled under R-8 to a discount on the premium for the title policy. Benavides was not given the mandatory R-8 discount, however, when the loan was closed.

Benavides brought a putative class action against Chicago Title in the United States District Court for the Western District of Texas to recover the overcharge.  She also obtained leave to intervene as a class representative in the putative class action that Caesar Hancock

- 3 -

("Hancock") had initiated against Chicago Title in this court. Benavides' suit was then transferred to this district and consolidated with the case that Hancock had filed. Hancock and Benavides asserted claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), and under Texas law for unjust enrichment, money had and received, and implied contract. They alleged that they refinanced their residential mortgages and, as required by their lenders, purchased reissue title insurance polices, but that Chicago Title failed to discount the premium charged for the reissue title insurance policies, as required by Texas law.

The court granted summary judgment dismissing Hancock and Benavides' RESPA and unjust enrichment claims. *Hancock I*, 635 F.Supp.2d at 551, 560-61. It then denied plaintiffs' motion for class certification, and it permitted Chicago Title to implead Capital as a third-party defendant. *Hancock v. Chi. Title Ins. Co.*, 263 F.R.D. 383, 392, 393-94 (N.D. Tex. 2009) (Fitzwater, C.J.) ("*Hancock II*"), *aff'd* 636 F.3d 699 (5th Cir. 2011). Hancock and Benavides eventually dismissed their claims against Chicago Title and are no longer parties.

In its third-party complaint, Chicago Title alleges that Capital calculated, collected, and disbursed the premium for the title insurance policy that Benavides purchased. Chicago Title asserts claims against Capital for breach of contract, breach of fiduciary duty, and indemnity. It maintains that Capital is liable for the amount allegedly overcharged Benavides and any alleged class members, together with all additional damages, attorney's fees, and

costs resulting from such overcharges.[3]  Essentially, the relief it seeks mirrors the costs it incurred defending against Benavides' individual claims and the class claims in this case, exclusive of any fees and costs that relate to Hancock's individual claims.

Chicago Title moves for partial summary judgment establishing Capital's liability on its breach of contract and indemnity claims.[4]  Capital moves for summary judgment as to all of Chicago Title's claims.

II

When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the opposing party must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor.  *Anderson*

---

[3]Capital filed, and this court granted, a motion for leave to designate additional title agencies as responsible third parties pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 33.004 (West 2008).  Capital also sought leave to bring a fourth-party action against these title agencies as contribution defendants under Fed. R. Civ. P. 14, but the court denied the motion. *See Hancock v. Chi. Title Ins. Co.*, 2012 WL 82820, at *3-4 (N.D. Tex. Jan. 11, 2012) (Fitzwater, C.J.).

[4]Chicago Title does not move for partial summary judgment on its breach of fiduciary duty claim.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing party fails to meet this burden.  *Little*, 37 F.3d at 1076.

When a party moves for summary judgment on a claim or defense on which it will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) ( Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Before turning to the specific grounds of the parties' cross-motions, the court will address Capital's contentions, set forth in one section of its summary judgment brief and at various points in its briefing supporting its own motion and opposing Chicago Title's

motion,[5] that Chicago Title has made judicial admissions that defeat its summary judgment arguments and that the doctrines of judicial estoppel and the law of the case do so as well.

Capital contends that Chicago Title is advancing positions that are inconsistent with the ones it took when it was defending the claims brought against it as a defendant; that Chicago Title has judicially admitted certain facts and should be judicially estopped from taking positions inconsistent with these statements; and that Chicago Title is bound by the law of the case. None of these contentions has merit.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making [it]." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "[F]or a statement of counsel to qualify as a judicial admission 'it must be made intentionally as a waiver, releasing the opponent from proof of fact.'" *United States v. Chavez-Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012) (quoting *Martinez*, 244 F.3d at 476); *see also In re Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) ("[O]nly 'deliberate, clear and unequivocal' statements can constitute conclusive judicial admissions." (citation omitted)). "Judicial admissions generally . . . are restricted to matters of fact which otherwise would require evidentiary proof, and therefore, do not include legal theories or

---

[5]At various points in the briefing, the parties request that the court permit them to adopt their briefing in one of these summary judgment motions as if made in briefing the other motion. In the context of these cross-motions, the court grants these requests and has considered both sets of briefs in tandem in deciding the motions. The court does not suggest, however, that it would permit a similar approach in a case where the cross-motions addressed disparate issues or where a party could through this procedure effectively and materially exceed the page limitations on briefing.

conclusions[.]"  *Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*, 2008 WL 3365520, at *5 n.2 (E.D. La. Aug. 8, 2008) (citations omitted).  Whether a court "treat[s] statements in briefs as binding judicial admissions of fact . . . is within [its] discretion."  *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (citations omitted).  None of the matters on which Capital relies—or at least none that is material to the court's decision today—qualifies as a judicial admission.

"Judicial estoppel applies to protect the integrity of the courts—preventing a litigant from contradicting its previous, inconsistent position *when a court has adopted and relied on it*."  *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (emphasis added) (citation omitted).  "Where a party intentionally makes statements *that are accepted as true by a court*, that court may use the judicial estoppel doctrine to bar the party from relying on later statements clearly inconsistent with the earlier position."  *Sociedad Colombiana De Construcciones, Sa-Sococo v. Int'l Columbia Res. Corp.*, 2002 WL 1868100, at *3 (5th Cir. June 20, 2002) (per curiam) (emphasis added) (citing *Ahrens*, 205 F.3d at 833).  "Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position."  *Ahrens*, 205 F.3d at 833 (citation omitted).  Capital has not shown that any position that Chicago Title has taken and that is material to the present motions was accepted

by the court.[6]  Judicial estoppel therefore does not apply.

Capital's reliance on the law of the case doctrine is also misplaced.  Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."  *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)); *see also Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880 (5th Cir. 1993).  Capital relies on the doctrine to argue that the law of the case essentially establishes that there was no one correct way to apply the R-8 discount or to objectively measure whether Capital's conduct complied with R-8 at the time of the Benavides transaction and met the appropriate standard of care.  This premise is not established by the law of the case.

IV

A

Chicago Title seeks partial summary judgment establishing that Capital is liable on Chicago Title's breach of contract and indemnity claims.  It maintains that Capital breached the Contract by failing to "[c]omply with all applicable laws and regulations relating to the

---

[6]For example, Capital contends in support of one of its causation arguments that Chicago Title should be judicially estopped from taking a position contrary to its challenge to Benavides as an adequate class representative. D. 7-31-12 Br. 36.  But it does not show that the court accepted Chicago Title's position, i.e., that it denied class certification on this basis.  In fact, the court did not.  *See Hancock II*, 263 F.R.D. at 384 ("The dispositive question presented by plaintiff's motion for class certification is whether she has met the predominance requirement of Fed. R. Civ. P. 23(b)(3).").

conduct of [Capital's] business," which is a duty imposed on Capital as Chicago Title's agent by ¶ 4(J) of the Contract.  P. 7-31-12 App. 2.  Chicago Title contends that Capital is obligated to indemnify it under ¶ 8(D) of the Contract, which provides that "[Capital] shall be liable to and agrees to indemnify and to save harmless [Chicago Title] for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following: . . . Failure of [Capital], its officers and employees to comply with the terms of this Contract . . . ."  *Id.* at 4.

B

"A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant's breach of the contract, and (4) damages to plaintiff resulting from the breach." *Mesa v. Verizon Bus. Network Servs., Inc.*, 2012 WL 3452696, at *12 (N.D. Tex. Aug. 14, 2012) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am., NA*, 343 F.3d 544-45 (5th Cir. 2003)).

Under Texas law, to recover on an indemnity claim, Chicago Title must prove that (1) a contractual indemnity agreement existed between it and Capital, (2) the agreement obligated Capital to indemnify Chicago Title if a certain triggering event occurred, (3) the triggering event occurred, (4) all conditions precedent for recovery had occurred, been performed, waived, or excused, and (5) Chicago Title has been damaged.  *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995).

For its breach of contract claim, Chicago Title has established beyond peradventure the existence of a valid contract and its performance under that contract.  For its indemnity

claim, Chicago Title has established beyond peradventure that a contractual indemnity agreement existed, that the agreement obligated Capital to indemnify Chicago Title if Capital failed to comply with the terms of the Contract, and that all conditions precedent for recovery have occurred or been performed.

Chicago Title has also established that Capital failed to comply with the terms of the Contract and, in turn, that the triggering event (the failure to comply with the Contract) occurred.  It has demonstrated beyond peradventure that Capital failed to comply with all applicable regulations relating to the conduct of its business when it did not give Benavides the R-8 discount.[7]  Chicago Title has shown that Capital is obligated under the Contract to indemnify Chicago Title for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from Capital's failure to comply with the terms of the Contract.

Under R-8, Chicago Title was obligated to give Benavides the premium discount if she qualified.  *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 699 (5th Cir. 2012).  "'[T]he discount is mandatory for all borrowers who qualify.'"  *Id.* at 700 (quoting *Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699, 700 (5th Cir. 2011)).  This is so "[r]egardless of the circumstantial evidence in the borrower's file."  *Id.* (quoting *Benavides*, 636 F.3d at 700).  Capital concedes that Benavides was qualified for the discount, *see* D. 8-21-12 Br. 6 ("When it was proven that the credit was due, Capital gave Benavides the credit."), although it

_____

[7]Capital does not argue in opposition to Chicago Title's motion or in support of its own motion that R-8 is not a regulation relating to the conduct of its business.

maintains that it did not know of, and had no obligation to determine, Benavides' eligibility at the time of closing. But because she was qualified, Benavides was entitled to the discount under Texas law. *See Ahmad*, 690 F.3d at 700; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009) ("Granting the R-8 [discount] to [an] eligible borrower is mandatory."); *Hancock II*, 263 F.R.D. at 385 ("Insurers are required to give the reissue discount whenever it applies; the borrower need not request it.").[8] Capital was Chicago Title's agent, and its General Counsel testified, Capital issued the title policy on behalf of Chicago Title, charged the premium, and charged too much by human mistake. *See* P. 7-31-12 App. 85-86.

## C

Capital relies in its opposition to Chicago Title's motion and in support of its own motion on a number of arguments, but each is misplaced.

Capital maintains that there is no duty on which Chicago Title can base its claims, and that internal policies do not create duties that do not already exist. At one point, it even posits that "[w]ithout a legal duty there can be no *negligence*," D. 7-31-12 Br. 12 (emphasis

---

[8]In its reply brief in support of its summary judgment motion, Capital contends that Chicago Title "fails to identify any case or regulation that identifies the standard of care of, the duties and obligations of or which party in a transaction bears the burden of determining whether R-8 applies." D. 9-4-12 Reply Br. 1. Under Texas law, however, the insurer is obligated to give the discount to any borrower who qualifies, even if the borrower does not request it. There is no "standard of care" that, if complied with, can insulate the insurer from this obligation, nor is there a "dut[y] or obligation[]" imposed on a qualified borrower to demonstrate entitlement to the discount. The qualified borrower need not even request that the discount be given.

added), when Chicago Title is not even asserting a negligence claim against Capital. Because Capital's relevant duties are contractual—arising under ¶¶ 4(J) and 8(D) of the Contract—this argument lacks force.[9]

Capital contends that Chicago Title has not provided evidence that Capital committed certain "errors or omissions," "failures," and "improper closings."  D. 8-21-12 Br. 2. Chicago Title need not prove "errors or omissions" or "improper closings" because it does not rely on these provisions of the Contract for its indemnity claim.  And as the court explains, Chicago Title has established beyond peradventure that Capital failed to comply with the terms of the Contract—which is a duty imposed by ¶ 4(J) of the Contract—by failing to comply with R-8 and give Benavides the mandatory discount.

Capital posits that it correctly applied the R-8 discount at the time of the Benavides transaction.  It relies on various grounds for excusing its failure to give Benavides the discount and for arguing that Chicago Title cannot prove that Capital violated R-8 when it failed to discount the premium.  These arguments can be grouped and summarized as follows: (1) there is no evidence that Capital violated R-8 because there is no proof that Capital knew that Benavides' prior loan was insured, and Capital had no obligation to

---

[9]To the extent that Capital intends to argue that there is no duty to support Chicago Title's breach of fiduciary duty claim, the court notes that, under Texas law, "[a]n agency creates a fiduciary relationship as a matter of law." *Sassen v. Tanglegrove Townhouse Condominium Ass'n*, 877 S.W.2d 489, 492 (Tex. App. 1994, pet. denied); *see SJW Prop. Commerce, Inc. v. Sw. Pinnacle Props., Inc.*, 328 S.W.3d 121 (Tex. App. 2010, pet. denied) ("The relationship between agent and principal is a fiduciary relationship." (citing Restatement (Second) of Agency § 1 (1958)).

determine whether it was; (2) Chicago Title admits that Capital tendered the credit to Benavides, offering a post-closing rebate that complies with R-8, and such rebates are consistently employed in the title industry; (3) Chicago Title essentially maintains that Capital committed an automatic, *per se* violation of R-8 that is not supported by case law, statutes, or materials from the Texas Department of Insurance, despite an absence of proof at the time of closing that a prior loan was insured, despite Chicago Title's admission that there was an "open question" about whether Benavides' prior mortgage was insured and therefore whether she qualified for the discount, despite Chicago Title's repeated arguments that there are no recognized duties on the part of an agent to answer the "open question" to determine the applicability of R-8, and despite its statements that the credit is due only when there is proof; and (4) Capital has established that it employed acceptable practices when it did not give Benavides the credit because there was no proof of her entitlement to the credit, and, once it was proved that she was entitled to the credit, Capital gave it to her.[10]

Capital concedes that Benavides was entitled to the discount. *See* P. 8-21-12 Br. 6 ("When it was proven that the credit was due, Capital gave Benavides the credit."). It essentially argues that it did not violate R-8 because there was no proof at the time the

---

[10]Capital singles out one argument in Chicago Title's brief, in which it contends there were telltale signs in Capital's file indicating that Benavides' prior mortgage was insured. In its reply brief, Chicago Title states that it "mentioned [the telltale signs] to show that Capital's file contained no apparent justification for not giving the R-8 discount." P. 9-4-12 Br. 5. Considering the court's conclusion that the R-8 discount was mandatory because Benavides qualified for it, it need not address Chicago Title's reliance on telltale signs that her prior mortgage was insured or address Capital's opposition to such reliance.

transaction was closed that Benavides was entitled to the discount (because it was an "open question" whether Benavides' prior mortgage was insured) and Capital had no obligation to determine whether it was, and, once it was established that Benavides was entitled to the discount, Capital offered her a rebate.  But the law is settled that the discount is mandatory for all borrowers who qualify.  And it is undisputed that Benavides was qualified.  Therefore, under settled law, Benavides was entitled to the discount at the time the loan was closed.

Capital's reliance on having rebated the discount is also misplaced.  Assuming that giving such a rebate could in some circumstances support the legal conclusion that R-8 was not violated, in this instance the rebate was not offered until after Benavides had sued Chicago Title.  *See* P. 8-21-12 App. 198 (testimony of Thomas Naler that refund offer was made to plaintiffs' attorney).  Therefore, Capital's evidence about rebate practices in general is insufficient to avoid the conclusion that it violated R-8 in this instance.[11]

## D

Chicago Title's breach of contract and indemnity claims both require proof of damages.  The court holds below that Chicago Title has established beyond peradventure that there is "some nexus" between Capital's failure to discount Benavides' insurance premium and the damages for which Chicago Title sues for breach of the contractual indemnity clause.  The court also rejects below Capital's reliance on ratification and on the contention that the indemnity agreement is unenforceable under Texas law.  Accordingly, Chicago Title has

---

[11]In one of its causation arguments, Capital states that it "complied with the Rule by offering a refund."  D. 7-31-12 Br. 34.  This assertion is incorrect under the facts of this case.

established that Capital is liable in some amount on Chicago Title's indemnity claim, and is therefore entitled to partial summary judgment establishing Capital's liability, with the issue of damages to be resolved by the jury at trial.

As the court explains below, however, Chicago Title has failed to make the required showing of damages in support of its claim for breach of contract.  The court therefore denies Chicago Title's motion for partial summary judgment in this respect because this claim is being dismissed based on Capital's motion.[12]

V

Capital maintains that it is entitled to summary judgment dismissing all of Chicago Title's claims on the ground that Chicago Title ratified Capital's conduct.[13]

Citing the principle of Texas law that a principal can ratify the unauthorized act of an agent when the principal has no knowledge of the act but then retains the benefits of the transaction after acquiring full knowledge of it, Capital argues that Chicago Title ratified the Benavides transaction.  But the reasoning on which Capital relies does not fit within the definition of ratification, because Capital does not identify an *unauthorized act* that it

---

[12]Although Chicago Title cannot recover on its breach of contract claim, Capital's failure to comply with the Contract still enables Chicago Title to recover from Capital under the contractual indemnity clause.  That clause provides that Capital's failure to comply with the Contract confers on Chicago Title a right of indemnity "for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from" that failure, which is a standard that Chicago Title has satisfied.

[13]Capital adopts in its brief in opposition to Chicago Title's motion the grounds included in its brief in support of its own motion, and it relies on an additional argument in the opposition brief.  *See* D. 8-21-12 Br. 10-11.

committed.

In the context of this case, "[r]atification is the adoption or confirmation, by one with knowledge of all material facts, of a prior act that did not then legally bind that person and which that person had a right to repudiate." *Thomson Oil Royalty, LLC v. Graham*, 351 S.W.3d 162, 165-66 (Tex. App. 2011, no pet.) (citing *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 84 (Tex. App. 1996, writ dism'd by agr.)). The summary judgment evidence shows without genuine dispute that Capital was at all material times acting within the scope of its authority as Chicago Title's agent. Therefore, Capital's affirmative defense[14] of ratification is legally deficient to entitle it to summary judgment in its own favor or to defeat Chicago Title's motion for partial summary judgment.

## VI

Capital contends that the indemnity agreement is unenforceable under Texas law because it does not satisfy the fair notice requirements.

In Texas, a contract provision releasing a party from all liability claims caused by its own future negligence must comply with the fair notice requirements of the "express negligence doctrine" and "conspicuousness." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). But Chicago Title is seeking indemnity only for losses that resulted from Capital's conduct. The fair notice requirements apply only when "one party exculpates itself from its own future negligence." *Green Int'l, Inc. v. Solis*, 951 S.W.2d

---

[14]Under Texas law, "ratification is an affirmative defense." *Reyes v. Storage & Processors, Inc.*, 86 S.W.3d 344, 351 (Tex. App. 2002), *aff'd*, 134 S.W.3d 190 (Tex. 2004).

384, 387 (Tex. 1997); *see also DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App. 2001, no pet.) (holding fair notice does not apply "where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee."). Accordingly, Capital is not entitled on this basis either to prevail on its own summary judgment motion or to defeat Chicago Title's motion for partial summary judgment establishing liability on its indemnity claim.

VII

Capital opposes Chicago Title's motion and moves for summary judgment based on various arguments that posit that Chicago Title has failed to make the showing of causation that is necessary to recover damages on any of its claims.

A

Capital maintains that each of Chicago Title's claims requires a showing of proximate causation or some similar variation of that concept; that the breach of fiduciary claim[15] requires a showing of proximate cause; that the breach of contract claim requires proof that the damages Chicago Title seeks are the natural, probable, and foreseeable consequence of Capital's conduct; and that Chicago Title has failed to meet its burden under any of these standards.  Capital maintains that Chicago Title's $1 million claim is too attenuated from Capital's conduct to constitute cause in fact; that Chicago Title can only prove that Capital failed to discount the title policy premium of one person, Benavides, that there is no proof

---

[15]Capital also refers to a "negligence" claim, D. 7-31-12 Br. 30, but Chicago Title does not allege such a claim.

that it failed to apply the R-8 discount to others, and that because the single claim of a single plaintiff is legally insufficient to form a class action, Capital's conduct could not have created any circumstance in which the Benavides transaction could create a class action. Capital also argues that its conduct merely furnished a condition that made Chicago Title's injuries possible (here, the ability to attempt to obtain class certification based on other persons' claims), which is legally insufficient to prove cause in fact; that Chicago Title seeks damages that were not foreseeable; and that Chicago Title has not yet presented any evidence of any amount of damages attributable solely to Benavides and her $370 credit.[16]

Chicago Title responds that it need only show that its damages resulted from Capital's overcharging of Benavides; that this standard merely requires proof of "some nexus" between Capital's failure to apply the R-8 discount and Chicago Title's attorney's fees and costs; and that Chicago Title has made this showing based on evidence that the overcharge gave Benavides standing to sue for R-8 violations on behalf of herself and other similarly situated persons.

B

1

"Generally, the measure of damages for breach of a contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been

---

[16]In opposition to Chicago Title's motion, Capital also contends that, under the contractual indemnity provision, Chicago Title must show that Capital did something improper. Because Chicago Title relies on ¶ 8(D) of the Contract, this argument is misplaced.

performed." *Penner Cattle, Inc. v. Cox*, 287 S.W.3d 370, 372 (Tex. App. 2009, pet. denied) (citations omitted).

"A contract for indemnity is analyzed under the same legal principles applicable to any other contract." *Crimson Exploration, Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 443 (Tex. App. 2010, no pet.) (citing *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App. 1992, writ denied)). Under the Contract, Capital agreed to indemnify Chicago Title "for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses *resulting from*" Capital's failure to comply with the terms of the Contract. P. 7-31-12 App. 4 (emphasis added). Although the Supreme Court of Texas did so in the context of a business auto policy, it has offered useful guidance concerning the meaning of the phrase "resulting from" when used in an indemnity agreement. In *Lancer Insurance Co. v. Garcia Holiday Tours*, 345 S.W.3d 50 (Tex. 2011), the court analyzed the phrases "result from" and "arise out of" and held that there was "no significant distinction between the two phrases." *Id.* at 55.

A Texas court of appeals examined similar phrases in *Crimson*, a case that preceded *Garcia*. In *Crimson* the court addressed a contractual indemnity clause that provided that the indemnitor would indemnify the indemnitees for "all claims, liabilities, losses, damages, and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with (i) actions taken or omitted to be taken by [Crimson], their affiliates, employees or agents[.]" *Crimson*, 341 S.W.3d at 442-43 (emphasis omitted). The court held that "[t]o 'relate to' simply means to 'have reference to,' 'concern,' 'pertaining to,'

- 20 -

'associated with' or 'connected with.'" *Id.* at 443 (citing *E.I. Du Pont De Nemours & Co. v. Shell Oil Co.,* 259 S.W.3d 800, 806 (Tex. App. 2007, pet. denied)). "[T]he term 'arising out of' 'means that there is simply a "causal connection or relation,"' or 'but for causation,' rather than either direct or proximate causation." *Id.* (quoting *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)). Accordingly, "[t]he plain meaning of 'arising from or connected with' is that there must be 'some nexus between' the actions taken or omitted to be taken by the indemnitor 'and the detriment for which indemnity is sought' by the indemnitee." *Id.* (citation and some internal quotation marks omitted). Because the Supreme Court of Texas has determined that there is no significant distinction between the phrases "result from" and "arise out of," this court holds that the requirement of "some nexus" applies to the contractual indemnity clause in this case. For its indemnity claim, therefore, to meet the causation requirement of its damages claim, Chicago Title need only prove "some nexus" between Capital's failure to discount Benavides' title insurance premium and the damages it seeks.[17]

"To prevail on a breach of fiduciary duty claim, the plaintiff must prove that the defendant's breach of [its] fiduciary duties proximately caused the plaintiff's damages." *Finger v. Ray*, 326 S.W.3d 285, 291 (Tex. App. 2010, no pet.).[18] Under Texas law,

---

[17]The reasonableness of Chicago Title's claimed expenses, of course, remains to be determined by the jury.

[18]Under Texas law, to establish a breach of fiduciary duty, Chicago Title must prove: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the

proximate cause consists of cause in fact and foreseeability. *See, e.g., Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). "'Cause in fact' means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred . . . . 'Foreseeability' means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Id.*

2

It does not appear from the summary judgment briefing that Chicago Title is attempting to demonstrate that it has met its burden concerning damages under the contract standard as opposed to the indemnity contract standard, or concerning breach of fiduciary duty.[19]  Chicago Title's briefs in support of its own motion and in opposition to Capital's motion contain several references to indemnity.  For example, Chicago Title argues that it can show that it is seeking losses "resulting from" Capital's conduct (i.e., under the indemnity contract standard derived from ¶ 8(D) of the Contract).  P. 7-31-12 Br. 11-12.  And it distinguishes cases cited by Capital as not "involv[ing] an indemnification agreement," P. 9-4-12 Br. 6, and counters a causation argument on the basis that "[t]hat level

---

plaintiff or benefit to the defendant.  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. 2006, pet. denied) (citing *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App. 2004, no pet.)).

[19]Although Chicago Title does address the proximate cause standard that applies to such a claim, it does so only after contending that this standard does not apply.  *See* P. 8-21-12 Br. 23, 25.  Since proximate cause plainly is the causation standard for a breach of fiduciary duty claim, it is apparent that Chicago Title is addressing proximate cause only on the contingency that the court holds that the indemnity claim requires proof under that standard; it is not attempting to address its claim for breach of fiduciary duty.

of direct causation is not necessary *in an indemnity case like this*," *id.* at 8 (emphasis added). The limited explicit references to breach of contract found in Chicago Title's briefs actually rely on the indemnity clause standard. *See* P. 7-31-12 Br. 11 (arguing under rubric "CHICAGO TITLE SUSTAINED DAMAGES AS A RESULT OF CAPITAL'S CONTRACTUAL BREACH" that, under the Contract, Chicago Title's damages "result[ed] from," i.e., the indemnity clause standard, "Capital's overcharging [of Benavides]," and citing ¶ 8 of the Contract (the indemnity paragraph)); P. 8-21-12 Br. 23 (arguing that "Chicago Title's contract claims stop short of requiring proximate cause. Under the agency agreement, Capital must indemnify Chicago Title for all loss 'resulting from' various matters, including Capital's breach of contract," and citing ¶ 8 of the Contract). Nor does Chicago Title explicitly address breach of fiduciary duty, although it maintains that it can demonstrate proximate cause, if so required. The court therefore concludes that Chicago Title has adequately addressed the damages component of its contractual indemnity claim, but not its claims for breach of contract or breach of fiduciary duty.

3

Turning to Chicago Title's indemnity claim, the court holds that a reasonable jury could find that there is "some nexus" between at least some of the attorney's fees and expenses that Chicago Title incurred defending Benavides' individual claim and the putative class action and Capital's failure to provide Benavides the R-8 discount. Had Capital not failed to give Benavides the discount, she could not have sued Chicago Title and could not have sought class certification on behalf of herself and others. Without Capital's omission,

Benavides could not have been a plaintiff or the representative of a putative class.

The court therefore denies Capital's summary judgment motion in this respect and holds that Chicago Title has made the required showing of sufficient damages to establish that Capital is liable in some amount on Chicago Title's indemnity claim.

*    *    *

For the reasons explained, the court grants in part and denies in part both parties' summary judgment motions.  The court holds that Chicago Title is entitled to partial summary judgment establishing Capital's liability on Chicago Title's indemnity claim, and that Capital is entitled to summary judgment dismissing Chicago Title's claims for breach of contract and breach of fiduciary duty.  The court otherwise denies the motions.  The damages component of Chicago Title's indemnity claim remains to be tried.

**SO ORDERED**.

January 11, 2013.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE