IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CEASAR HANCOCK and EMMA | § | |
| BENAVIDES, Individually and | § | |
| on behalf of all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:07-CV-1441-D |
| VS. | § | (Consolidated with Civil Action |
| | § | No. 3:08-CV-1916-D) |
| CHICAGO TITLE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant- | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| CAPITAL TITLE OF TEXAS, LLC, | § | |
| | § | |
| Third-Party Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Following the entry of partial summary judgment and a jury trial, third-party plaintiff Chicago Title Insurance Company ("Chicago Title") moves for an award of attorney's fees and costs, and third-party defendant Capital Title of Texas, LLC ("Capital") moves under Fed. R. Civ. P. 50(b) for judgment as a matter of law, or, in the alternative, for a new trial, and to strike the evidence supporting Chicago Title's motion for attorney's fees. For the reasons that follow, the court grants in part Chicago Title's motion for attorney's fees and costs and denies Capital's Rule 50(b) motion and motion to strike.

I

The court assumes the parties' familiarity with the background facts and procedural history of this case. *See, e.g., Hancock v. Chi. Title Ins. Co.*, 2013 WL 139547, at *1-2 (N.D. Tex. Jan. 11, 2013) (Fitzwater, C.J.) ("*Hancock III*"). The court will therefore limit its discussion of the background facts and procedural history to what is necessary to understand today's decision, which relates to the third-party action.

Chicago Title is a title insurer licensed to do business in Texas, and Capital acted as Chicago Title's insurance agent from 2003 until 2008. The parties entered into an Issuing Agency Contract ("Contract") that governed their relationship. Under the Contract, Capital was obligated to "[c]omply with all applicable laws and regulations relating to the conduct of [Capital's] business." *Hancock III*, 2013 WL 139547, at *1. Capital also promised "to indemnify and to save harmless [Chicago Title] for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following: . . . Failure of [Capital], its officers and employees to comply with the terms of this Contract . . . ." *Id.*

This lawsuit started as a putative class action brought by Ceasar Hancock ("Hancock"), later joined by Emma Benavides ("Benavides"), against Chicago Title complaining of alleged overcharges for premiums charged for title insurance policies. They alleged that they had not been given a discounted title insurance premium, as required under Rate Rule R-8 of the Texas Basic Manual of Title Insurance, and they asserted claims under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(b), and under Texas law for

unjust enrichment, money had and received, and implied contract. *Id.* at *2. The court granted summary judgment dismissing some claims. *Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 560-61 (N.D. Tex. 2009) (Fitzwater, C.J.). The court also denied plaintiffs' motion for class certification and permitted Chicago Title to implead Capital as a third-party defendant. *Hancock v. Chi. Title Ins. Co.*, 263 F.R.D. 383, 392, 393-94 (N.D. Tex. 2009) (Fitzwater, C.J.), *aff'd*, 636 F.3d 699 (5th Cir. 2011). After the Fifth Circuit affirmed the denial of class certification and Hancock and Benavides dismissed their claims, only Chicago Title's third-party action against Capital remained.

In the third-party action, Chicago Title asserted multiple claims against Capital, alleging that it was liable for the costs that Chicago Title had incurred defending the claims of Benavides, individually, and the putative class.[1] On cross-motions for summary judgment,[2] the court granted Chicago Title's motion for summary judgment as to liability on its indemnity claim based on the Contract, and it dismissed all other claims. This left for trial only the determination of the amount of damages that Chicago Title could recover from Capital on its indemnity claim. *See Hancock III*, 2013 WL 139547, at *11. After the jury returned a verdict in Chicago Title's favor in the sum of $747,755.13, the court entered judgment in that amount, together with prejudgment and post-judgment interest.

_____

[1]Chicago Title does not seek attorney's fees and costs related to defending Hancock's individual claims.

[2]Chicago Title moved for partial summary judgment; Capital moved for summary judgment on all claims.

Chicago Title now moves for an award of attorney's fees and related expenses incurred in litigating its third-party action against Capital. Capital moves for judgment as a matter of law, or, in the alternative, for a new trial, and it moves to strike evidence supporting Chicago Title's motion for attorney's fees.

II

The court first considers Capital's Rule 50(b) motion for judgment as a matter of law, or, in the alternative, for a new trial. Capital maintains that it is entitled to relief on eight grounds.

A

Capital first argues that the jury instructions erroneously required only "some nexus" between Capital's failure to discount Benavides' insurance premium and the particular fees Chicago Title sought to recover, and instead should have instructed the jury on "but-for causation" or "cause-in-fact." Chicago Title responds that the contractual language requires only "some nexus," as the court held in *Hancock III*, and that, regardless, Capital cannot object now because it did not raise this issue at trial in its Rule 50(a) motion.

"[W]hen a party fails to raise an issue in a Rule 50(a) motion, it waives the right to raise that issue in a Rule 50(b) motion." *Waganfeald v. Gusman*, 674 F.3d 475, 481 n.14 (5th Cir. 2012) (citing *Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 707-08 (5th Cir. 2011)); *see also Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001) (holding that if party "fails to move for judgment as a matter of law under [Rule 50(a)] on an issue at the conclusion of all of the evidence," it waives both the "right to file a renewed

- 4 -

post-verdict Rule 50(b) motion and also [the] right to challenge the sufficiency of the evidence on that issue on appeal").  Although Capital did argue at the summary judgment stage that causation beyond "some nexus" was required and also objected to the jury charge on this ground, it did not move for judgment as a matter of law on this basis.  The court therefore concludes that this ground for relief under Rule 50(b) is waived.  Moreover, even if Capital had not waived this ground for Rule 50(b) relief, the court would adhere to its decision in *Hancock III* for the reasons explained in that decision.

B

Capital next maintains that the amount of damages the jury awarded did not result from Capital's conduct.  It asserts that "[t]here was no evidence from which the jury could have determined the proper amount of damages actually attributable to Capital's conduct because Chicago Title's damages evidence did not enable the jury to make that determination."  Capital Mot. for JMOL 4-5.  Capital contends that Chicago Title failed to meet its burden of proving its damages with "reasonable certainty"[3] because, although Chicago Title introduced evidence of damages, it did not provide sufficient evidence connecting the damages to Capital's conduct.  Chicago Title responds that it introduced testimony and detailed exhibits that provided the jury with sufficient evidence to determine whether the asserted fees had some nexus to Capital's conduct.

---

[3]*See, e.g.*, *Nutrasep LLC v. TOPC Tex., LLC*, 309 Fed. Appx. 789, 791 (5th Cir. 2008) (per curiam) (holding that for plaintiff to recover compensatory damages in breach of contract case under Texas law, he must show that he suffered pecuniary loss as result of the breach and must prove those damages with "reasonable certainty").

The court concludes from its review of the trial evidence that the proof is sufficient to support the jury verdict. Chicago Title introduced, *inter alia*, P. Exh. 11, which listed Chicago Title's attorney's fees by date, timekeeper, task, and other categories. And it introduced the testimony of Robert Fogarty, Esquire ("Fogarty"), Chicago Title's lead counsel in the underlying Benavides and class action litigation, explaining the work that Chicago Title's attorneys performed and why. Chicago Title presented sufficient evidence for the jury as trier of fact to make a reasonable finding that there was "some nexus" between Capital's failure to comply with the terms of the Contract and the fees that Chicago Title's evidence showed it incurred. This is not a case where Chicago Title did no more than "guess at its expenses then dump a ream of unexplained receipts in the jury's lap." *Nutrasep LLC v. TOPC Tex., LLC*, 309 Fed. Appx. 789, 791 (5th Cir. 2008) (per curiam). Moreover, the jury did not award Chicago Title all the fees it sought, thereby confirming that it deliberately evaluated and weighed the evidence.

## C

The next five grounds for Capital's motion present arguments that the court resolved in *Hancock III* at the summary judgment stage. Capital in fact acknowledges that its "post-judgment motion addressing [these] issues [is] not intended to expand upon the prior briefing before the Court that this Court already considered, but [is] merely bringing those issues forward for preservation-of-error purposes." Capital Mot. for JMOL Reply Br. 8. Because the court has already addressed these grounds in *Hancock III*, 2013 WL 139547, at *3-8, it denies the motion in this respect.

D

Capital also posits that the jury award is so excessive that it is punitive in nature and implicates due process concerns.  In support, it cites *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), and *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), both of which invalidated *punitive* damages awards that were significantly in excess of the compensatory damages awarded.  Capital argues that the damages in this case significantly exceed the harm caused to Benavides.

At least one fundamental flaw in this argument is readily apparent: the jury verdict represents an award of *compensatory*, not *punitive* damages.  *Campbell* and *BMW* are therefore inapposite factually and in principle.  Furthermore, Capital's argument that the damages are excessive compared to the harm caused to Benavides is essentially a sufficiency of the evidence argument recast as a due process claim.  Even assuming that a due process violation is theoretically possible in the context of the amount of an actual damages award, where, as here, there is sufficient evidence for a reasonable jury to reach the verdict it did concerning actual damages, there can be no due process violation based on the amount of the award.

E

Accordingly, for the reasons stated, Capital's Rule 50(b) motion for judgment as a matter of law, or, in the alternative, for a new trial, is denied.

III

The court next considers Capital's motion to strike fee statement evidence supporting Chicago Title's motion for attorney's fees. Capital appears to request that the court strike the evidence as a Rule 37 sanction for not disclosing the fee statements before the eve of trial.

A

To put this motion in context, the court first sets out the facts regarding Chicago Title's disclosure of fee statements. In its Rule 26(a)(1)(A) initial disclosures, Chicago Title did not disclose fee statements regarding fees incurred prosecuting this third-party action. In discovery, Capital requested production all fee statements for the "Benavides matter" and the "Hancock matter." Capital Mot. to Strike Chicago Title Resp. App. 29. These terms were not defined. Chicago Title responded by producing all fee statements for fees incurred defending the putative class action brought by Benavides and Hancock, but it asserted privilege and redacted certain fees that it was not seeking to recover. Capital moved to compel disclosure of the entirety of the fee statements for the "Benavides matter" and the "Hancock matter." Judge Toliver granted that portion of the motion to compel, concluding that Chicago Title had not explained how the billing statements were privileged. Chicago Title then produced all fee statements listing fees incurred defending the Hancock, Benavides, and putative class actions. In doing so, it stated that "Chicago Title understands the terms 'Benavides matter' and the 'Hancock matter' *not to include* Chicago Title's efforts to pursue claims against Capital." Capital Mot. to Strike Chicago Title Resp. App. 37

(emphasis added).  A few months later, in January 2013, Capital asserted that Chicago Title should have disclosed fee statements listing fees incurred litigating the third-party action. Chicago Title disclosed these fee statements on February 1, 2013, a few days before trial.

Capital argues that Chicago Title's failure to disclose fee statements from the third-party action violated Chicago Title's initial disclosure obligations, its obligation to respond to Capital's discovery request for all fee statements for the "Benavides matter" and the "Hancock matter," and Judge Toliver's order on Capital's motion to compel.  Capital posits that, although the documents were disclosed on the eve of trial, it was prejudiced because it was unable to use these documents during trial to show a pattern of over-billing.  Chicago Title responds that it did not violate its discovery obligations or Judge Toliver's order on the motion to compel because the terms "Benavides matter" and "Hancock matter" did not clearly refer to fees incurred in this third-party action, and because Capital did not make clear that it sought such documents until the eve of trial.

B

The court declines to strike Chicago Title's evidence.  The court has broad discretion under Rule 37 to fashion an appropriate sanction for a failure to disclose or to obey a discovery order.  *See* Rule 37(b) & (c); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).  It is unclear that Chicago Title was obligated to disclose, before it did, the fees that it maintains it incurred in prosecuting this third-party action.  It was not obligated to produce these fee statements in its initial disclosures.  *See Symetra Life Ins. Co. v. Nat'l Ass'n of Settlement Purchasers*, 2012 WL 5880799, at *12 (S.D. Tex. Nov.

21, 2012) ("[A] prevailing party generally cannot initially disclose its invoices for fees to be incurred in litigation").  And Capital's request can reasonably be read to request production of fees incurred in defending the putative class action brought by Hancock and Benavides rather than the third-party action.  That such a reading is reasonable is corroborated by the fact that attorney's fees of the type Chicago Title is seeking in the third-party action are not considered until after trial and the entry of judgment, on motion.  *See* Rule 54(d) (providing that motion for attorney's fees and related nontaxable expenses must be made by motion and filed no later than 14 days after the entry of judgment); *Wright v. Blythe-Nelson*, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001) (Fitzwater, J.) ("In most instances, as in the present case, Rule 54(d) provides that attorney's fees are decided by the court on motion filed after the entry of judgment.").

Moreover, considering the Rule 54(d) procedure and the nature of such attorney's fees requests, this court has imposed a more relaxed discovery standard.  For example, the "court has typically treated the designation of attorney's fee experts differently from other experts" because "[a]ttorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject." *Id.* at *6.  And "[b]ecause the matter is handled by motion and usually decided on affidavits, the court can cure any prejudice that a party may face from a tardy designation by continuing submission of the attorney's fee issue if the party needs additional time to obtain its own expert." *Id.*  In the same way, the production of fee records that support Rule 54(d)

attorney's fee motions can occur at a later point in time without prejudicing the nonmovant, who will have additional time, if needed and requested, to contest the fees requested and present opposition expert and fact evidence.

This last point has force in this case because, even if the court assumes that Chicago Title should have produced the fee statements at an earlier point in response to Capital's request for production, Capital has not shown prejudice.  In its brief, Capital argues only that it was prejudiced because it received the documents mere days before the trial began and was therefore unable to use them at trial.  Yet it has failed to argue (much less demonstrate) that the delayed disclosure prejudiced it in litigating Chicago Title's post-trial motion for attorney's fees.  The court declines in its discretion to strike Chicago Title's evidence as a Rule 37 sanction.

IV

The court now considers Chicago Title's motion for attorney's fees.

A

In a diversity case, state law controls whether attorney's fees are recoverable and reasonable.  *See, e.g., Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Texas law permits an award for attorney's fees only if authorized by statute or contract.  *See, e.g., Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006).

Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008) provides that a party "may recover reasonable attorney's fees from an individual or corporation, in addition to the

amount of a valid claim and costs, if the claim is for . . . an oral or written contract." When a prevailing party in a breach of contract suit seeks attorney's fees, an award of reasonable fees is mandatory under § 38.001 if there is proof that the fees are reasonable. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App. 1998, pet. denied); *Atl. Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 449 (Tex. App. 1993, writ denied)). "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)).

In addition to the statutory right to recover attorney's fees under the provisions of § 38.001, "[p]arties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp.*, 295 S.W.3d at 653; *Mohican Oil & Gas, LLC v. Scorpion Explor. & Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App. 2011, pet. denied). "[T]he terms of the contract, not statute, control the outcome[.]" *Mohican Oil & Gas*, 337 S.W.3d at 321; *see also Intercontinental Grp.*, 295 S.W.3d at 653-54 (determining attorney's fees according to mandatory fee-award contract and looking to § 38.001 only as instructive but not controlling).

## B

Chicago Title maintains that it is entitled to attorney's fees pursuant to a provision in the Contract. The relevant provision states:

> If a legal action or other proceedings are brought for the enforcement of this Contract, or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees, administrative costs and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

Chicago Title Mot. for Atty's Fees App. 6.  Alternatively, Chicago Title posits that it can recover under § 38.001(8), which provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."

Chicago Title moves for an award of $568,306.96 in attorney's fees.  Capital does not dispute that Chicago Title is a prevailing party under the terms of the Contract or § 38.001, and therefore is entitled to attorney's fees.[4]  Capital contends, however, that the requested attorney's fees are excessive because Chicago Title is seeking fees for hours not reasonably spent on this action.[5]  Capital argues that the total number of hours is excessive, as evidenced by the fact that Chicago Title spent almost twice the amount of hours on this suit as Capital did; Chicago Title has not exercised billing judgment; the fees incurred in challenging Capital's motion to designate third-parties are excessive; the fees associated with re-deposing Tom Naler ("Naler") and deposing Keith Hafner ("Hafner") and Jason Schnell ("Schnell")

---

[4]Capital does argue that Chicago Title is not entitled to attorney's fees because the judgment should be set aside and because the court should strike all of Chicago Title's evidence.  The court has rejected these arguments above.

[5]Capital does not argue that the hourly rate of any of Chicago Title's attorneys is excessive.

- 13 -

should be excluded because these depositions were unnecessary; fees incurred opposing reasonable requests to extend time should be excluded; and fees incurred preparing certain deposition excerpts, revising an expert report, and incurred by Fogarty when testifying as a fact witness should be excluded.  Because the Contract provides for the recovery of "reasonable attorney's fees," which is the same standard found in § 38.001, and neither side argues that the standards for attorney's fees awarded under the Contract and under § 38.001 are different, the court assumes they have the same scope.

C

Capital advances the general contention that Chicago Title's fee request is facially excessive because the number of hours expended is approximately double the hours incurred by Capital's counsel.  Although this argument appears to be introductory—leaving specific challenges to the sections of the brief that follow—Capital requests a discount to the fee request based on this difference in fees and the premise that Capital's counsel of necessity incurred fees becoming acquainted with a legal matter with which Chicago Title was already familiar.  Capital posits that it should not be required to pay fees generated in a case that was overstaffed by lawyers who generated unreasonable fees based on excessive time expenditures.

The court declines to reduce Chicago Title's attorney's fees request based on this facial challenge that is predicated on a comparison of the hours expended by counsel for each side.  The relative expenditure of time is a factor to be considered in an appropriate case, but it is not alone determinative.  As one court has explained:

- 14 -

in small cases as well as large ones, opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on. Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive. Rather, any such comparison must carefully control for factors such as those mentioned, as well as for the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work.

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (internal citation omitted). The court concludes that Capital's challenge based on a comparison of the time expended does not sufficiently control for factors that would reasonably explain the differences in the services rendered and the time expended. Capital relies on one factor—Chicago Title's perceived advantage based on its familiarity with the matter in dispute—but does not control for a host of other variables that could affect the time expended by Chicago Title's counsel. Accordingly, although the court finds below that certain reductions should be made to the fees that Chicago Title seeks, it declines to reduce the fee request based on a mere comparison of Chicago Title's fees to Capital's fees.

D

Capital next argues that Chicago Title has merely made a conclusory assertion that it has exercised billing judgment but has not provided evidence that billing judgment was exercised. Capital maintains that the court should reduce the fee request by 50% based on

- 15 -

this lack of evidence[6] and the gross disparity between the attorney's fees expended by both parties.  In its motion for attorney's fees, Chicago Title asserts that it has exercised billing discretion by not seeking $56,174.00 in fees out of $640,116.00 in total recorded time, and it supports this contention with an affidavit from Derek Diaz, Esquire ("Diaz"), one of the attorneys who represents it in this suit.  In reply to Capital's response, Chicago Title identifies each fee entry that it either has written off or otherwise is not seeking to recover.

Texas law requires the exercise of billing judgment.[7]  When inquiring into the reasonableness of the hours for which the prevailing party seeks to recover, "[c]harges for duplicative, excessive, or inadequately documented work should be excluded." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).  Thus

> [c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting.  It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (internal quotation marks and

---

[6]Capital's response brief argues that Chicago Title reduced its fees only by 2.6%, but this appears to be a mistake.  The only evidence is a reduction of $56,174.00 in fees representing 226 hours of work, which amounts to an 8.77% write-off of total fees incurred.

[7]Chicago Title does not contend that it is excused under the Contract from proving billing judgment.

emphasis omitted).  *Accord Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("[P]laintiffs are charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment."); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam) ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant.").  "It is not enough for the fee applicant merely to say that the fees charged by its attorneys necessarily reflect the exercise of billing judgment."  *Altec Capital Servs., LLC v. Weir Bros., Inc.*, 2013 WL 866193, at *6 (N.D. Tex. Mar. 8, 2013) (Fitzwater, C.J.).

Although Chicago Title initially did not produce a list of the specific hours written off, it has provided this evidence in a supplemental appendix to its reply brief.  *Cf. Walker*, 99 F.3d at 769 n.9 (recommending that fee applications document "not only hours claimed, but also hours written off" (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990)).  Further, when a fee applicant has failed to prove that billing judgment was exercised, this court has reduced the fees requested based on a percentage, but it is never found that a drastic reduction approaching 50% was warranted on this basis.  *See, e.g., Merrick v. Scott*, 2011 WL 1938188, at *4 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (imposing 10% reduction); *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (same).  In fact, the percentage reduction that the court has imposed in prior cases where evidence of billing judgment was absent is comparable to the reduction that Chicago Title

is taking on its own: a reduction by Chicago Title that is accompanied at least by some evidence of billing judgment. Having examined the evidence and Chicago Title's omitted hours, the court concludes that Chicago Title's reduction of its requested fees by $56,174.00 (8.77% of the total fees incurred) is sufficient.

E

Capital's next contention is the first of its arguments targeted at specific hours for which Chicago Title seeks to recover. Capital contends that Chicago Title devoted an excessive amount of time (26.5 hours representing $7,800 in fees) opposing Capital's motion to designate responsible third-parties. The gravamen of Capital's argument is that Chicago Title's local counsel would have known that such opposition would be wasteful because the pleading standards for such a designation are low and Capital would have been able to amend even if Chicago Title's objection was sustained, but Chicago Title used Ohio-based attorneys who engaged in wasteful and unnecessary billing. Chicago Title replies that its position was not unreasonable because it was possible to prevent the designation of third parties and there is no evidence that local counsel could and would have handled the matter more efficiently.

Capital's assertion that local counsel would have handled this matter at a lower cost is not supported by the record. Essentially, Capital is relying on supposition: that because third-party designations are freely permitted, a Texas lawyer (unlike an Ohio lawyer) would have recognized this fact, and a Texas lawyer would have expended less time opposing a motion that was likely to be granted. Because this conjecture is not supported by the record, the court declines to reduce Chicago Title's fee application on this basis.

F

Capital contends that re-deposing Naler was unnecessary[8] because Chicago Title covered the same ground as it had in its prior deposition of Naler.  It posits that Chicago Title should not recover for services (43.9 hours representing $13,872.00 in fees) associated with preparing for and taking the deposition.  Chicago Title responds that Naler was re-deposed because Capital designated him as its corporate representative in response to its notice to depose Capital on certain issues, and that, regardless, it was justified in deposing him in his individual capacity because Capital identified him as one of only three people having personal knowledge of the matters Chicago Title sought to discover.

The court finds that Chicago Title had sufficient grounds to depose Naler as an individual witness and again as a witness whom Capital had designated under Rule 30(b)(6).  Accordingly, the court overrules this objection.

G

Capital next contends that the depositions of Hafner and Schnell were unnecessary and that the court should exclude the associated 16.4 hours and $5,330 in fees.

Capital argues that it was unreasonable to depose Hafner because he was no longer employed at Capital when the Benavides transaction closed or when he was deposed, and because his only knowledge of the case was through his litigation contact with Capital's trial

---

[8]Capital argues throughout its response brief that certain fees resulted from unnecessary hours, even though the proper standard is whether the attorney's fees incurred were reasonable.  The court will treat each challenge to the necessity of particular attorney's fees as an argument related to whether the claimed fees were reasonable.

counsel. Capital maintains that Hafner had no personal knowledge of any relevant issues and that, when he was deposed, Chicago Title had already deposed Naler as Capital's corporate representative. Chicago Title replies that the deposition was reasonable, and it directs the court to Capital's interrogatory answers identifying Hafner as one of two or three people with knowledge about Capital's defenses and the Benavides transaction, and to the fact that Hafner verified Capital's discovery responses. The court finds that Capital's challenge to the fees incurred in deposing Hafner is not supported and is overruled.

Capital argues that it was unreasonable to depose Schnell, Capital's Chief Information Officer. Capital maintains that, in response to Chicago Title's requests for production of electronically stored information ("ESI"), Capital produced an extensive log of privileged ESI that it declined to produce, and Chicago Title then deposed Schnell to ask about Capital's servers and search capabilities. Capital maintains that this discovery was unnecessary, and that, in the Benavides case, Chicago Title had already obtained Capital's materials related to Benavides and the application of R-8. In reply, Chicago Title states that it deposed Schnell as someone Capital had designated to testify as a corporate representative.

Although the mere fact that a person is designated in response to a Rule 30(b)(6) deposition notice does not mean that the deposition of that person is needed, Capital has not demonstrated that it was unnecessary for Chicago Title to take a deposition that would enable it to test whether Capital had made adequate efforts to produce requested discovery. And, even if true, the fact that "nothing useful resulted from [the deposition]," Capital Br. in Opposition to Atty's Fees 7, does not mean the deposition was unnecessary. It could have

- 20 -

served the function of confirming that Capital had made an adequate search of its servers, using satisfactory search capabilities. Capital has not demonstrated that the court should exclude the fees incurred in taking Schnell's deposition.

H

Capital next argues that the court should exclude $25,445.50 in attorney's fees incurred from November 8, 2011 to January 11, 2012 in opposing reasonable requests for extensions of scheduling deadlines. Capital maintains that Chicago Title indicated in November 2011 that it would agree to Capital's request for an across-the-board extension of 120 days for all deadlines, but then changed its position and fought the extension, incurring $25,445.50 in attorney's fees in the process. It posits that because the court later found that Capital had demonstrated good cause for the requested relief and granted the requested extension, it was unreasonable for Chicago Title to have contested the extension request in the first place. Capital also offers other reasons for contending that the services rendered in this respect were unreasonable.

In addition to the foregoing objection, Capital contends that the court should exclude the additional sum of $3,622.50 in fees incurred in April 2012. Capital posits that these fees should not be awarded because Chicago Title unreasonably opposed extensions of time to conduct depositions for which Capital's attorney and expert had developed a conflict.

In its reply brief, Chicago Title contends that Capital's contentions are stated in uncivil terms, that Capital's discussion of these matters does not demonstrate flexibility on its part to consider anything except unconditional acceptance of its demands, that Capital

moved to quash the depositions before the parties could meaningfully confer, and that Capital had earlier refused an extension request for a witness who was recovering from cancer.

The court finds that Chicago Title's fee request for $25,445.50 should be reduced to $3,500 to reflect the time reasonably expended. The dispute over extending the scheduling order should not have been as extensive as it was. But in the circumstances presented, Chicago Title was entitled to object to Capital's request for an extension of the scheduling order deadlines. After reviewing the nature of the principal and corollary disputes and the services rendered, the court finds that Chicago Title's counsel could reasonably have accomplished the necessary work in 10 hours. Multiplying 10 hours by the Diaz hourly rate of $350, the court finds that the reasonable fee for the services in question totals $3,500 rather than $25,445.50, resulting in a reduction of $21,945.50.

The court finds that Chicago Title's fee request for $3,622.50 should be reduced to $700.00 to reflect the time reasonably expended. Chicago Title does not dispute that, in April 2012, Capital's counsel was called to trial in a case that ultimately took approximately one month to try, and that this trial conflicted with depositions scheduled of Chicago Title's witnesses; that Capital's expert was involved in another trial on the date Chicago Title was scheduled to depose him; that Capital informed Chicago Title of the conflicts and requested a limited extension of the discovery deadline to permit the depositions to be rescheduled; and that Chicago Title refused this request. When this discovery dispute was presented to the court by motion, the court denied the motions without prejudice, but "with instructions to the parties to resolve their scheduling conflicts under this court's civility standards and with an

- 22 -

indication that the court will make reasonable adjustments to any affected scheduling deadlines." Apr. 30, 2012 Order at 1. The court pointedly noted that

> [t]he scheduling conflicts that are the subject of Capital's motions appear to be of a type that are routinely addressed by attorneys who are conducting themselves according to this court's civility standards. The court therefore expects counsel to resolve these scheduling conflicts under these standards, entering into reasonable agreements to reschedule the depositions. Once they have done so, they can request by agreement (or by motion) that the court adjust any affected pretrial deadlines, such as the discovery and motion deadlines, that they cannot reasonably comply with due to the delayed deposition dates.

*Id.* at 2-3. Following the entry of the order, Capital's extension requests were resolved by agreement. As is clear from the court's order, Chicago Title was not justified in opposing Capital's requests under the circumstances.

The court disagrees with Capital, however, that all the time expended should be excluded. It was Capital's scheduling conflicts that triggered the need for the extension in the first place. Even under optimal conditions of complete cooperation between counsel, a lawyer responding to the other side's request for an extension is entitled to charge for his time when considering the request and its effect on the litigation, conferring with his client, communicating about the request with opposing counsel, and reviewing any written agreement or proposed pleading and order to effect the agreement. The court finds that two hours would have reasonably been incurred in this respect. Multiplying two hours by the Diaz hourly rate of $350, the court finds that the reasonable fee for the services in question totals $700 rather than $3,622.50, resulting in a reduction of $2,922.50.

I

Capital contends that it was unreasonable for Chicago Title to incur $4,107.50 in fees to prepare deposition excerpts for witnesses who are available to testify at trial because deposition excerpts for witnesses who are available at trial cannot be used. Chicago Title responds by citing Rule 32(a)(3), which allows a party to use at trial the deposition of a witness who was designated as a corporate representative under Rule 30(b)(6), and Rule 32(a)(2), which permits the use of a deposition to impeach the testimony of a witness. In its objection, Capital has failed to demonstrate that the deposition excerpts Chicago Title prepared could not have been used at trial under Rule 32(a)(2) or (3). The court therefore overrules the objection.

J

Capital moves to exclude $1,301.00 in fees that Chicago Title seeks for revising an expert report, contending that "an attorney should not be revising the reports of experts." Capital Br. in Opposition to Atty's Fees 12. Capital has cited no authority supporting the premise of this objection. Concluding that there is no *per se* prohibition against recovering such fees, the court overrules the objection. *Cf. Keithley v. Home Store.com, Inc.*, 2008 WL 3833384, at *19 (N.D. Cal. Aug. 12, 2008) (awarding, *inter alia*, fees for "revising the current drafts of expert reports" as sanction for party's failure to produce documents).

K

Last, Capital contends that Chicago Title should not be awarded $6,820 in fees charged by Fogarty, one of Chicago Title's counsel, for time he spent as a fact witness.

Chicago Title responds that Fogarty's knowledge as an attorney was crucial, and that, although he served as a fact witness, he was involved with the case as an attorney.

The court holds that Chicago Title can recover for Fogarty's reasonable time spent on the case in his capacity as an attorney for Chicago Title, but cannot recover fees for the time that Fogarty spent in his capacity as a fact witness. *See, e.g., Emmenegger v. Bull Moose Tube Co.*, 33 F.Supp.2d 1127, 1138 (E.D. Mo. 1998) (excluding from fee award time that attorney spent preparing to testify and testifying as fact witness); *see also* 28 U.S.C. § 1821 (specifying amount that "witness in attendance at any court of the United States" may be paid). Thus the court reduces Fogarty's awardable fees to the amount he would have been paid as a witness under § 1920. Chicago Title does not dispute that the sum of $6,820 of these fees was incurred in Fogarty's capacity as a fact witness. Multiplying $40 per day times of the number of days (2) he testified, the court awards the sum of $80 instead of $6,820, resulting in a reduction of $6,740.

## L

Accordingly, the court awards Chicago Title the sum of $536,698.96 in attorney's fees.

V

The court now considers Chicago Title's application for costs in the amount of $79,393.19.

A

Capital maintains that Chicago Title cannot recover any taxable costs because it did not file a bill of costs, as required by N.D. Tex. Civ. R. 54.1. Rule 54.1 provides:

> [a] party awarded costs by final judgment or by judgment that a presiding judge directs be entered as final under Fed. R. Civ. P. 54(b) must apply to the clerk for taxation of such costs by filing a bill of costs in a form approved by the clerk. Unless otherwise provided by statute or by order of the presiding judge, the bill of costs must be filed with the clerk . . . no later than 14 days after the clerk enters the judgment on the docket.

Chicago Title does not contest that it failed to file a bill of costs in the "form approved by the clerk" within 14 days of the judgment's being entered on the docket, and does not in fact address Capital's argument directly. Instead, it maintains that § 1920 is inapplicable because it is seeking to recover costs under the Contract. Capital implicitly contends that Rule 54.1 does not apply.

The court concludes that Chicago Title's failure to file a bill of costs precludes it from recovering taxable costs awarded under Rule 54(d)(1), but it does not preclude Chicago Title from recovering costs under the Contract, even if such costs would also be recoverable under § 1920. Rule 54.1 applies to taxable costs. This is clear from the Rule's reference to "taxation of such costs." But sums that are awarded under a contract—even if they would be awardable under § 1920—are not governed by Rule 54.1. They are controlled by Rule

- 26 -

54(d)(2)(A)—which provides (with an exception not pertinent here) that "[a] claim for attorney's fees and related nontaxable expenses" must be made by motion—and by Rule 54(d)(2)(B)(i)—which dictates that the motion be filed no later than 14 days after the entry of judgment. If what Chicago Title is seeking are contractually-awarded expenses rather than taxable costs, its motion is timely—even if some of the expenses would also qualify under § 1920 as taxable costs—because Chicago Title timely requested them as part of a motion for attorney's fees and costs filed within the time prescribed by Rule 54(d)(2)(B)(i).

The court holds that Chicago Title is seeking contractually-awarded expenses rather than taxable costs. The Contract entitles Chicago Title, as the prevailing party, "to recover reasonable attorneys' fees, *administrative costs and other costs incurred in that action or proceeding*, in addition to any other relief to which it may be entitled." Chicago Title Mot. for Atty's Fees App. 6 (emphasis added). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citations omitted). The phrase "administrative costs and other costs incurred in that action or proceeding" is not confined to costs that are taxable under § 1920. *See Great White Fleet (US) Ltd. v. DSCV Transport, Ltd.*, 2002 WL 523355, at *1 (E.D. La. Apr. 3, 2002) ("[B]ecause legal costs were awarded pursuant to the terms of a contract between the parties—and not because they were taxable costs awarded to the prevailing party under the law—they are recoverable under the contract."); *see also First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 597 n.12 (Fed. Cl. 2009) (suggesting that taxable

costs could be awarded pursuant to an agreement entitling the prevailing party to costs "in addition to any other relief to which it . . . may be entitled" because the agreement "d[id] not by its terms distinguish between taxable and non-taxable costs").[9]  Nor does the contractual phrase exclude costs that would be taxable under § 1920.  Section 1920 taxable costs are awardable by statute, and the contractual phrase provides that "administrative costs and other costs incurred in that action or proceeding" are "*in addition to* any other relief to which [Chicago Title] may be entitled."  (Emphasis added).  Therefore, because Chicago Title is seeking costs incurred in the third-party action that are recoverable under the Contract (even if they would also qualify as taxable costs under § 1920), the deadline for filing the motion was prescribed by Rule 54(d)(2)(B)(i), not Rule 54.1.

The foregoing reasoning addresses Capital's contention that Chicago Title is not entitled to recover costs that are not within § 1920's limited categories of taxable expenses. Parties to a contract are free to allocate among themselves the costs of litigation arising from the contract.  *See One Call Sys., Inc. v. Hous. Lighting & Power*, 936 S.W.2d 673, 676 (Tex. App. 1996, writ denied).  And Chicago Title and Capital agreed to a scope of recoverable

---

[9]There are contractual clauses that specify that recoverable costs are not limited to taxable costs.  *See, e.g., CWCapital Asset Mgmt., LLC v. Chi. Props., LLC*, 610 F.3d 497, 504 (7th Cir. 2010) (agreement entitled prevailing party to recover "its reasonable costs and expenses, not limited to taxable costs and reasonable attorney's fees"); *Zavecz v. Yield Dynamics, Inc.*, 179 Fed. Appx. 116, 118 (3d Cir. 2006) (fee shifting provision allowed "reasonable attorneys' fees and costs and expenses, including those of appeal and not limited to taxable costs").  The absence of a similar provision in this case is not controlling because the relevant provision entitles Chicago Title to "administrative costs and other costs incurred in that action or proceeding."

costs that is greater than § 1920 provides.  Chicago Title's request for costs was included in its timely motion for attorney's fees and costs filed within the time prescribed by Rule 54(d)(2)(B)(i).  That some of the costs it seeks would be taxable under § 1920 does not trigger the deadline of Rule 54.1, which explicitly pertains to taxable costs awarded by judgment.

## B

The court now turns to Capital's specific challenges to Chicago Title's requested expenses.  The first contested expense is expert witness fees.[10]  Although neither Texas law nor § 1920 permits the recovery of expert witness fees as taxable costs[11] and some contracts explicitly provide for the recovery of expert witness fees,[12] the contractual provision in question—which entitles Chicago Title to recover "administrative costs and other costs incurred in that action or proceeding, *in addition to any other relief* to which it may be

---

[10]In its reply brief, Chicago Title increased its request by the sum of $771.25 based on its initial reliance on an invoice that Capital paid rather than two invoices that Chicago Title paid.

[11]*See Gutierrez v. Wright Lawfirm, PLLC*, 2012 WL 1898950, at *7 (Tex. App. Apr. 27, 2012, no pet. h.) (mem. op.) (Texas law) ("Expert witness fees are not recoverable as court costs.") (citations omitted); *Barrow v. Greenville Ind. Sch. Dist.*, 2005 WL 6789456, at *23 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (addressing § 1920) (citing *Gaddis v. United States*, 381 F.3d 444, 451-52 (5th Cir. 2004) (en banc)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

[12]*See, e.g., Wibbenmeyer v. TechTerra Commc'ns, Inc.*, 2010 WL 1173072, at *5 (Tex. App. Mar. 26, 2010, pet. denied) (mem. op.) ("Any party that successfully enforces this agreement in a court of law or equity shall be entitled to its attorney and expert witness fees."); *Estate of Todd v. Int'l Bank of Commerce*, 2013 WL 1694937 (Tex. App. Apr. 18, 2013, no pet. h.) (mem. op.) (similar).  As noted, *see supra* note 9, the absence of such a provision is not controlling here.

entitled" (emphasis added)—is broad enough to make them recoverable. They qualify as "other costs incurred in [the third-party] action."

Capital also seeks to exclude $2,626.42 in delivery and messenger expenses. As with expert witness fees, even if these expenses are not recoverable under § 1920 or Texas law,[13] they qualify as "other costs," if not "administrative costs."

The third expense Capital argues is unrecoverable as a matter of law is a $6,291.75 charge for "Timeline Animation Design," which appears to be for a graphical design used at trial. Capital maintains this is not recoverable under § 1920. But this cost, too, qualifies as an "other cost[] incurred in [the third-party] action" and is therefore recoverable.

Finally, Capital argues that five "miscellaneous" expenses are not recoverable: $1,074.24 for general legal reference material, $460.06 for delivery, assembly, and disassembly of demonstrative exhibits, $148.61 for lunches during trial, $1,177.60 for office supplies, and $18 for a parking fee.[14] The court sustains the objections to the expenses for $148.61 for lunches during trial and $1,177.60 for office supplies. Although the provision for recovering costs is broad, there is no indication that the parties intended that administrative costs and other costs incurred in a particular action or proceeding would

---

[13]*See Wright v. Blythe-Nelson*, 2004 WL 2870082, at *10 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.) (§ 1920); *Allen v. Crabtree*, 936 S.W.2d 6, 8 n.2 (Tex. App. 1996, no pet.) (on rehearing) (Texas law).

[14]In its brief, Capital states that the total of these amounts is $1,700.91. D. Br. 19. This is the total of four of the five expenses, and omits the sum of $1,177.60 for office supplies.

include general office overhead or subsistence expenses (such as the need to eat a meal).  The court overrules the objection to the other expenses, concluding that they fall within the scope of the contractual clause and are recoverable.

C

Capital next advances a general argument that Chicago Title has not proved the necessity of many cost items.  This argument fails for at least two reasons.

First, a showing of "necessity" is required under § 1920, but Chicago Title is seeking an award of costs under the Contract.  The contractual standard is whether a cost incurred is reasonable.[15]  Although the question whether a cost is reasonable subsumes the question whether the cost is necessary, Chicago Title need not make a showing of  necessity *per se*.[16]

Second, Capital must object to specific expenses.  It cannot simply state that all of the expenses are unreasonable and/or unnecessary with the hope or expectation that the court will pour through the cost documents to determine whether Capital's blanket statement is

---

[15]In its reply brief, Chicago Title posits that the "costs need only be 'incurred' to be recoverable."  Chicago Title Reply Br. 8-9.  If by this assertion Chicago Title means that a cost in any amount is recoverable provided it was incurred in the third-party action, the court disagrees.  The court interprets the modifier "reasonable" in the phrase "reasonable attorneys' fees, administrative costs and other costs" to modify the terms "attorneys' fees," "administrative costs," and "other costs," so that all awarded fees and costs must be reasonable.

[16]As the court has done above in addressing Chicago Title's claim for attorney's fees, *see supra* note 8, the court will treat each challenge to the necessity of a particular cost as an argument related to whether the claimed cost was reasonable.

correct.[17]

## D

Separate from its general contention that Chicago Title has failed to prove the necessity of many cost items, Capital objects to the reasonableness of claimed costs.

Capital first objects to the sum of $5,124.50 to video-record each witness' deposition. Capital maintains that the cost of video-recording a deposition is recoverable only with prior court authorization, which Chicago Title did not obtain. Capital also posits that video-recording the depositions was unreasonable because Chicago Title also produced a written transcript, and there is no reason for both. Chicago Title does not argue that it received prior authorization, but it argues that both methods of recording the depositions were reasonable because the formats had different purposes: written transcripts for trial preparation and short impeachments, and video testimony for significant impeachments or the presentation of substantive testimony.

Prior authorization of video-recording services is required in the context of § 1920. *See Bank One Tex., N.A. v. Apex Energy, LLC*, 2002 WL 22055, at *2 (N.D. Tex. Jan. 4, 2002) (Fitzwater, J.) (citing *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993)). But § 1920 does not govern Chicago Title's application, the Contract does. These costs are

---

[17]In support of its argument that Chicago Title has not shown necessity, Capital cites *Auto Wax Co. v. Mark V Products, Inc.*, 2002 WL 265091, *4 (N.D. Tex. Feb 22, 2002) (Lynn, J.), which held that it was insufficient for a moving party to make a blanket assurance of necessity. *Auto Wax* is distinguishable, however, because it pertains to taxable costs under § 1920.

"other costs incurred in [the third-party] action."  And the court finds that the costs were reasonably incurred for the reasons Chicago Title states.

Capital next offers related arguments that it was unreasonable for Chicago Title to incur expenses re-deposing Naler and deposing Hafner and Schnell.  In substance, Capital's basis for objecting to these expenses is the same as it advanced for excluding the associated attorney's fees.  Because the court holds above that Chicago Title is entitled to recover its attorney's fees in this respect, it finds on the same basis that Chicago Title is entitled to recover the related costs as well.

Last, Capital asks the court to exclude the sum of $5,559.84 in expenses for copying and imaging on the ground that Chicago Title has not produced sufficient evidence that these expenses were necessary.  Under Rule 54(d) and § 1920(4), a prevailing party may recover copying and imaging expenses if it provides evidence that these costs were necessary to the litigation.  *Bank One*, 2002 WL 22055, at *2 (holding that prevailing party "must demonstrate some nexus between the costs incurred and the litigation.").  In the Contract, however, they merely needed to have been incurred in the third-party action and be reasonable.  Chicago Title has sufficiently made this showing, and the expenses are therefore recoverable.

E

Accordingly, the court awards Chicago Title the sum of $78,066.98 in costs under the Contract.

\* \* \*

For the reasons explained, the court grants in part Chicago Title's motion for attorney's fees and costs and denies Capital's Rule 50(b) motion and motion to strike.

**SO ORDERED.**

June 3, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE